## SUSAN B. SOWLES *v.* B. C. HALL AND WIFE.

*Mortgage. Agreement to sell and convey. When time is of the essence of such contract.*

1. C. mortgaged to B. and subsequently to S. B. foreclosed his mortgage, making S. a party. S. allowed the decree to become absolute under an arrangement that he should subsequently receive a deed of the premises upon paying it, as he did. While in possession he endorsed and delivered the C. notes to the oratrix, but did not assign the mortgage. Still later he conveyed to the defendant, who had no notice of the oratrix's interest. *Held,* that the oratrix could not assert her mortgage as against the defendant.

2. S. having the right to redeem certain premises, procured the defendant to furnish a portion of the money for that purpose. Thereupon the premises were deeded to the defendant, who signed a written contract agreeing to sell and convey the premises to the oratrix upon the tender of a certain sum to the defendant "at any time prior to the first day of January, 1888," and providing that unless such tender was made on or before said first day of January, 1888, said agreement should be absolutely null and void. *Held,* that time was of the essence of the contract, and that unless the oratrix made the tender within its life, she had no equity in the premises.

Bill in chancery to compel the defendants to specifically perform a certain written contract for the sale of the premises in question, or to foreclose the defendants' equity of redemption therein as might be equitable. Heard upon pleadings and a master's report at the September Term, 1888. TAFT, Chancellor, dismissed the bill, *pro forma.* The oratrix appeals.

The oratrix was the daughter of E. A. Sowles, and in all the transactions referred to the said E. A. Sowles acted as the agent of the oratrix. The defendant Ida A. Hall was the wife of the defendant B. C. Hall, and in these same transactions B. C. Hall acted as the agent of his wife. Previously to and at the time of these transactions B. C. Hall occupied the same office with E. A. Sowles, was his agent and attorney in many matters, and enjoyed his confidence in a high degree.

In 1876 Catherine Mann owned certain premises in the village of St. Albans which were mortgaged to the Ottauquechee Savings Bank. On the 15th of November of that year she and her husband executed a second mortgage of the same premises to one J. C. Babbett, and on the 11th of December of the same year a third mortgage to E. A. Sowles. Catherine Mann had erected three houses on these premises, and on December 26th, 1876, she conveyed one of these houses with the lot on which it stood to one Michael McGiff by deed warranty.

Subsequently the Babbett mortgage was assigned to A. P. Cross, and foreclosed in his name. E. A. Sowles was made a party defendant, and the decree was to become absolute April 26th, 1881. E. A. Sowles procured, for the purpose of protecting himself, an assignment of the decree by Cross to Albert Sowles, cashier of the First National Bank. On the 27th of April the bank conveyed the premises described in the decree to E. A. Sowles, and on the same day Sowles quit-claimed to McGiff that portion of the premises which had previously been conveyed to him. Sowles immediately went into possession of the balance of the premises and so continued until Sept. 1st, 1881, when he conveyed by deed warranty to Marcia P., Cornelia H. and Lucia Walker one of the two remaining houses with the lot on which it stood. The Walkers at once took and have ever since remained in possession.

At the September Term of the Franklin County Court, 1885, the savings bank began a foreclosure of its mortgage against the entire premises. Sowles had in the meantime become financially embarrassed, and his interest in the property had been attached by several creditors. The owners of the several parcels and the attaching creditors were made parties to the foreclosure, and a decree was obtained which was to become absolute as to all the defendants previous to Oct. 18th, 1886.

Before the commencement of the foreclosure proceedings the Walkers, who were poor people, had become anxious least they should lose the premises conveyed to them, and the cashier of the savings bank had represented the hardship of the case to

Sowles, and asked him if he could not pay the bank the amount its due and so release the Walkers. Sowles had replied that the property was so encumbered by attachment that he could raise nothing on it as the title then stood ; but that if the bank would foreclose and clear up the title he might; and the foreclosure was accordingly begun, and the decree allowed to become absolute upon the understanding that upon payment to it of the amount of its decree, the bank should convey the property to whomsoever Sowles should designate.

During this time Hall and wife occupied the third one of the houses erected by Catherine Mann, and being that portion of the premises remaining after the conveyances to McGiff and the Walkers. The Walkers frequently applied to Sowles and to the defendants to save their house for them. It was finally arranged that one Rich would loan $3,000 on the house and lot which the defendants occupied if Sowles would raise the balance of the savings bank decree. B. C. Hall was conversant with this arrangement and with all the negotiations which led up to it. For some reason this arrangement was not carried out, but the following was substituted : The savings bank decree amounted to about $4,250. Of this Rich furnished $2,000, Ida M. Hall, $1,000, and E. A. Sowles the balance. The savings bank deeded the whole property to A. P. Cross. Cross quit-claimed to McGiff the premises already conveyed to him, to the Walkers the premises already conveyed to them, and to the defendant, Ida A., the balance. Ida A. mortgaged to Rich for $2,000. The funds furnished by Sowles belonged to the oratrix, being held by him as her trustee.

There was some difference between the parties as to what right of redemption the oratrix was to have in the premises. Upon this point the master found :

" During the negotiations about the raising of the money to pay the said savings bank decree, it was talked between the said E. A. Sowles and B. C. Hall, that said Sowles or the oratrix should have the right to pay the three thousand dollars which the said Ida A. Hall had furnished as aforesaid and have the property ; but the terms and conditions were not agreed to spe-

cifically, as in what way it was to be secured to the oratrix, and this part of the business was left in this indefinite shape until the money had been raised and paid over and the deeds delivered and filed for record. The said E. A. Sowles and B. C. Hall met in the office of A. P. Cross before the deeds were delivered and said E. A. Sowles presented a writing for the said B. C. Hall and wife to sign respecting the property. The writing was not produced but it was conceded that the substance of the writing was that the oratrix had the right to redeem the property, by paying to the said Ida A. Hall the amount she had advanced on the property. I find that this was what E. A. Sowles understood the agreement was to be, but I do not find that the said B. C. Hall so understood it. The said B. C. Hall and wife refused to sign the writing so presented, but after some talk the said B. C. Hall procured the said A. P. Cross to draw up a writing to sign and which they afterwards did sign and deliver. The said E. A. Sowles, after the said other business had been completed, accepted of the writing so signed, as he testified " it was the best he could get."

The writing so drawn up by Mr. Cross was that referred to as the contract of Oct. 18, 1886, and was as follows :

" In consideration of one dollar to us paid by Susan B. Sowles of St. Albans, we hereby agree to sell and convey to said Susan or her assigns certain premises described in a deed from Albert P. Cross to Ida A. Hall, dated October 11, 1886, at any time prior to the first day of January, 1888, upon tender to said Ida A. on or before said date of the sum of three thousand dollars in money, and unless such tender be made on or before said first day of January, 1888, this agreement shall be absolutely null and void.

IDA A. HALL.          [L. S.]<br>BENNETT C. HALL.  [L. S.]

St. Albans, Vt., October 18, 1886."

Prior to January 1st, 1888, E. A. Sowles applied to the defendant B. C. Hall for an extension of the time limited in the contract. The master did not find that the defendants agreed to give this extension, but did find that Sowles understood that they would grant such extension.

On the 31st December, 1887, the oratrix tendered to the defendant Ida A. $1,000 in money and a sufficient bond of indemnity in the sum of $3,000. The tender was not accepted.

Sowles *v.* Hall and Wife.

The oratrix did not then know and was not informed by the defendants that they had paid anything on the Rich mortgage, but in fact they had paid $414.

The mortgage given by Catherine Mann to E. A. Sowles had never been assigned. Two of the notes secured by it had been, in 1884, endorsed in blank by Sowles and delivered to the oratrix, who still held them. The defendants had no knowledge whatever of this when they took their deed from Cross, and took that conveyance supposing their title to be a perfect one.

The master reported that at the date of that conveyance the premises were reasonably worth $3,500.

*E. A. Sowles,* for the oratrix.

The Mann mortgage was still upon record. Hence there was notice to the defendants.

In contracts for the sale of land, where the tender has not been made within the time specified, equity will grant relief, unless there has been gross negligence. *Hall* v. *Delaphaine,* 5 Wis. 206.

The delay in this case was caused by the fault of the defendants; hence they cannot insist upon it. *Potter* v. *Tuttle,* 22 Conn. 512 ; Pom. Spe. Per. Con. s. 337 ; *Potter* v. *Tuttle,* 22 Conn. 22 ; *Snider* v. *Spaulding,* 57 Ill. 487 ; *Richmond* v. *Robinson,* 12 Mich. 193.

The defendants could not give good title. Hence they cannot set up the failure of the oratrix to pay within the time. Pom. Spe. Per. Con. s. 381 ; *Wallace* v. *McLaughlin,* 57 Ill. 53 ; *Butch Ch.* v. *Mott,* 7 Paige, 77.

In case both parties are in fault, each impliedly waives strict performance as to time. Waterman Spe. Per. Con. s. 478 ; *Van Kumpson* v. *Knights,* 63 Barb. 203 ; *House* v. *Bently,* 7 Ohio, 417.

The oratrix made as full a tender of performance as she could. Sto. Eq. Jur. s. 776 ; *King* v. *Hamilton,* 4 Pet. 311.

*Cross & Start,* for the defendants.

The oratrix, by the terms of the written contract, had no right to a conveyance of these premises unless she tendered, prior to January 1st, 1888, three thousand dollars to the defendant Ida A. This she never did, and therefore has no equity in the premises. 5 Wait Act. & Def. s. 8, p. 808.

The opinion of the court was delivered by

ROYCE, Ch. J. This cause was heard on the pleadings and master's report, from which it appears that the mortgages given to Babbett and to the Ottauquechee Savings Bank were foreclosed, and Edward A. Sowles, who held a subsequent mortgage upon the same premises, was made a defendant in the foreclosure proceedings. Decrees were entered in both of the suits, and the equity of redemption was allowed to expire. Sowles' equitable interest in the agreements subsequently made with the owner of the title by which Sowles acquired the title did not have the effect to reinstate his mortgage as a lien upon the property. If Sowles had an equitable interest in the property, the report shows that he had parted with his interest in all of it except that portion that was deeded to the defendant Ida A.

The oratrix cannot stand upon her ownership of the notes described in the mortgage to Sowles, for the reasons above stated; and if she has any right under the bill to the relief prayed for, it must be upon the ground that she has paid in a part of the amount decreed to be paid to the Ottauquechee Savings Bank, or that she is entitled to a specific performance of the agreement executed October 18, 1886.

Whatever right the oratrix had by virtue of the payment made by her was merged in, and settled by, the contract of October 18th, 1886. Whether that contract is construed as recognizing the right of the oratrix to redeem, or as giving her a right to purchase, the duty which it was made incumbent on her to perform in order to make the contract available was expressed in clear and unambiguous language. By that contract the defendants agreed to sell and convey to the oratrix or her assigns the premises described at any time prior to January 1,

1888, upon tender to said Ida A., on or before that date, of the sum of $3,000 in money; and unless such a tender should be made on or before said January 1st, 1888, the agreement was to be absolutely null and void.

The oratrix undertook to make the tender required in the manner reported by the master, but it is not seriously claimed that the tender was a legal one; and no such tender as the contract called for has ever been made. The only importance to be attached to the facts found in relation to the tender that was made, is as tending to show a recognition by the oratrix of the necessity for making one.

The right of the oratrix to relief depends upon the construction to be given to the contract executed October 18, 1886, and the acts of the parties under it. The oratrix had no equitable lien by virtue of the assignment of the notes described in the bill; and so the only right she had was the one secured to her by the contract. The contribution made by her to the payment that was made to the Ottauquechee Savings Bank, upon the decree in its favor, did not give her any equitable right to the premises described in the decree, and the contract of October 18 was evidently made to give her an opportunity to reimburse herself for the payment so made by a purchase of the property; and the terms upon which she was to be allowed to make the purchase were clearly and definitely stated. No such tender having been made as was required by the contract, is the oratrix entitled to have a specific performance of it decreed upon the offer made to perform on her part at this time? That depends upon the question whether the time fixed by the parties for the making of the tender is to be regarded as conclusive.

It was held in *Longworth* v. *Taylor*, 14 Pet. 372, that time may be of the essence of a contract for the sale of property, and that it may be made so by the express stipulation of the parties; and a large number of cases are cited in the notes to *Seton* v. *Slade*, in White and Tudor's cases in equity, showing that to be the general rule in equity in England and this country. The distinction is noted that has been made on the point of the mate-

(17)

riality of time between cases of proposed sale, and of pledge of property, like a mortgage.

It was competent for the parties to make time of the essence of the contract, and they could not have done so in language more pertinent to express such intention than that used. The agreement was to be absolutely null and void unless the tender was made as agreed. The cases referred to by the counsel for the oratrix have generally been determined upon their peculiar circumstances, and in most of them the court have found that there was an express waiver of the requirement as to time, or that there was evidence upon which a waiver should be presumed. There is no finding here that there was any express waiver, and although the master has found that E. A. Sowles understood, a short time previous to January 1, 1888, that the time for performance on the part of the oratrix would be extended, the fact is not found that it was extended; and the fact that E. A. Sowles, as counsel for the oratrix, within the time named for the performance of the contract made the tender which it is found that he did make, tends strongly to show that he did not then understand that the time had been extended.

In *Benedict* v. *Lynch,* 1 John. Ch. 370, the contract contained an express stipulation that if the purchaser failed in either of his payments the contract should be void, and it was held that the parties had made time of the essence of the contract and that it might be laid down as a general rule that where the party who applies for a specific performance has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient excuse for his delay, the court will not decree a specific performance. 3 Pom. Eq. Jur. 457.

No such excuse has been found by the master in this case, and specific performance cannot be decreed. If the oratrix has lost the right to purchase the property, it resulted from her own negligence, in not complying with the terms upon which she was to be allowed to exercise it, and she cannot invoke the aid of a court of equity to afford her relief for a loss so incurred.

*The decree of the Court of Chancery is affirmed, and cause remanded.*