**Joseph L. Krupinsky et al. v. Otten Birsky and S. R. Young, Inc.**

[278 A.2d 757]

No. 83-70

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed June 1, 1971

*Whitcomb, Clark, Moeser & Zug,* Springfield, for Plaintiffs.

*John Parker,* and *George W. Lamb,* Springfield, for Defendants.

**Smith, J.** This is an appeal from the Windsor County Court of Chancery involving the validity of a claimed option granted on August 30, 1961, to S. R. Young, Inc., by Bolesof Birsky, Marjorie Birsky, Alphonse Birsky, Myrtle Birsky, Michael Yarosevich and Albina Yarosevich. Findings of fact made by the Windsor County Court of Chancery, after hearing, and the decree of the Chancellor, held the claimed option to be invalid.

An agreement was entered into by the Birskys above enumerated and S. R. Young, Inc., on August 30, 1961:

"DEPOSIT RECEIPT AND SALES AGREEMENT
Springfield, Vermont, August 30, 1961

Received from S. R. Young, Inc. the sum of Five Thousand and no Dollars as a deposit on account of the purchase price of the following described property, situated in the Springfield County of Windsor state of Vermont, to wit: All the land situate only on the southerly side of the highway leading from Chester to Springfield known as Route No. 11. Comprising 17.04 acres, be the same more or less.

Total purchase price is One Hundred Twenty Five Thousand and no Dollars balance of the purchase price to be paid as follows, to wit: Maximum of 30 per cent down and balance to be paid in equal payments over a period of ten years. It is so agreed S. R. Young, Inc. to have first option on remaining Birsky property situated on the northerly side of highway from Chester to Springfield known as Route 11. Also the Birskys agree not to sell or build property for the purpose of construction of Retail Stores in case S. R. Young, Inc. forfeit their option to buy. The above is for a ten year period.

I agree to sell the above described property on the terms and conditions herein stated and agree to pay the agent . . . ."

This is followed by the signatures of various members of the Birsky family. The agreement was recorded in August of 1969.

S. R. Young, Inc., made the various payments specified in the sales agreement and received a deed to the property on the southerly side of the highway upon which was constructed

a shopping center. However, over the intervening years a dispute arose among members of the Birsky property relative to the disposition of the property on the northerly side of Route No. 11. This led to the filing of a Petition for Partition in the Windsor County Court of Chancery. Commissioners were appointed to sell the premises in question and such Commissioners entered into an option agreement to sell the premises for a price of $95,000.00 on May 8, 1969.

However, before such option was exercised, apparently the Commissioners discovered the existence of the previous alleged option to S. R. Young, Inc., and had served upon S. R. Young, Inc., a copy of the "Report and Petition" of the Commissioners. Upon the offer of S. R. Young, Inc., to pay to the Commissioners the same amount of $95,000.00 which had been made in the third party offer, the agreed statement of facts show that the Commissioners and Young agreed that if the Chancellor found that the purported option held by Young was valid and binding, the Commissioners would sell to Young the property upon the agreed price of $95,000.00.

The conclusionary finding of fact made by the Chancellor below, upon which the decree was based is:

> "The Court finds that the so-called first option agreement contained in the 'Deposit Receipt and Sales Agreement' between S. R. Young, Inc., and the various members of the Birsky family dated August 11, 1961, and recorded in the Land Records of the Town of Springfield is invalid and not enforceable against the Commissioners appointed by the Windsor County Court of Chancery in that the agreement does not meet the requirements of the Statute of Frauds."

While the findings of the Chancellor do not disclose the specific reasons upon which his conclusionary finding was based, it is clear from the briefs before us that the action of the Chancellor was based upon the lack of a stipulated price set forth in the "first option" given to Young by the Birskys, as well as a refusal based upon the Statute of Frauds to allow oral testimony to be offered upon the subject of the price to be paid by Young to the Birskys in the event he exercised his option.

Turning directly to the questions presented, there is no doubt that the Deposit Receipt and Sales Agreement made between Young and the Birskys was a single contract, and that the price paid, and to be paid by Young was not only for the land which he acquired on the southerly side of Route No. 11, but for the promised forbearance on the part of the Birskys not to build a retail store on the northerly part of the premises, owned by them, and to grant him a "first option" as well. In other words, consideration was paid by Young for the option which was a part of the total contract between the parties.

■ An option has been defined by this Court as an agreement by which one binds himself to sell and convey to another party certain property at a stipulated price within a designated time, leaving it to the discretion of such other party to take and pay for the property. *Durfee House Furnishing Co. Inc.* v. *Great Atlantic and Pacific Tea Co.* 100 Vt. 204, 207, 136 A. 379 (1927).

That part of the contract between the parties relating to the option found in the Deposit Receipt and Sales Agreement, sets forth in certain language that the Birskys bind themselves to sell the property on the north side of Route No. 11 to Young for a definite period of ten years, at the price offered by an outsider, in the event the Birskys should decide to sell. It is true that a price certain in dollars to be paid for the property is not set forth in the agreement, and it is this lack which the appellants here claim voids the option. But as this Court has recently stated:

> "A contract includes not only what is expressly stated therein but also what is necessarily implied from the language used." *Lapoint* v. *Dumont Construction Company,* 128 Vt. 8, 258 A.2d 570, 571 (1969).

The important term of the contract between the parties in this connection is the use of the words "first option". While the meaning of this term has never been defined by this Court, it has been the subject of definition in other jurisdictions. While such definitions have more frequently been given in lease provisions, giving the lessees a "first option" or "first option to purchase", than in sales agreements of the nature

before us, we believe that the validity of such definitions is applicable here.

> "Phrases 'first option to purchase' or like expressions in leases have acquired an established and technical meaning importing a preferential right of lessee to purchase leased premises at same price and upon same terms as contained in any *bona fide* offer from a third party acceptable to the lessor." *King* v. *Dalton Motors, Inc.*, 260 Minn. 124, 109 N.W.2d 51, 53 (1961).
>
> "If the owner received an offer from a third party, the lessee, or the person having the first option to buy, shall have the right to meet any such *bona fide* offer of the third party." *Tamura* v. *De Iuliis*, 203 Or. 619, 281 P.2d 469, 472 (1955).

In the New York case of *Whiteside* v. *Petersen*, 128 N.Y.S.2d 17, 18, 204 Misc. 1079 (Sup. Ct. 1953), it was held that the words "first option" conferred a right of first refusal if the premises were offered for sale to another.

In the hearing before the Chancellor below, the appellant, over the objections of the appellee, submitted oral testimony by Mr. Young, President of Young, Inc., as well as that of Margaret Butler, the real estate agent who brought about the agreement between the parties, and drew up the Receipt and Sales Agreement, that it was the intent of the parties to give to Young, Inc., in entering into the option agreement, the right of first refusal for the property in the event the Birskys received an offer from another for the property during the ten year option period.

It is true that a contract granting to another an option to buy lands is an agreement concerning land and within the statute of frauds. *McGuirk* v. *Ward*, 115 Vt. 221, 224, 55 A.2d 610 (1947). But the parol evidence submitted in this instance was not inconsistent with the written contract between the parties, related to the same general subject matter and grew out of the same transaction, and hence, was admissible. *First National Bank* v. *Laperle*, 117 Vt. 144, 149, 86 A.2d 635 (1952); *Adams* v. *Jones*, 83 Vt. 334, 336, 75 A. 799 (1910); *Lapoint* v. *Dumont Construction Company*, *supra*.

However, even disregarding the oral testimony relative to the terms of the option, given below, the "first option" given to Young, Inc., by the Birskys was one which gave Young the right of first refusal of the property during the option period. While the contract did not fix a price certain, it did appoint a mode of determining the price, that is, by any offer made by a third party for the property. The contract was perfected when such price had been so determined.

> "When the contract appoints the mode of determining the price, and the price is determined according to that mode, the contract becomes perfect and complete in all respects, as if it has been originally fixed in the writing." *Hayes* v. *O'Brien*, 149 Ill. 403, 37 N.E. 73, 77 (1894), 55 Am.Jur. § 31, at 501, 502.

Upon the offer of Young to pay to the Commissioners the same price which had been offered them by a third party, the option became complete, and Young was entitled to exercise the rights granted him under such instrument.

For the reasons above stated, the decree of the Court of Chancery below must be reversed and remanded, with directions to enter a decree in favor of the appellant, in accordance with the views expressed in this opinion.

*Reversed and remanded.*