## Milton Board of School Directors v. Milton Staff Association, Local 130 VEA/NEA

[656 A.2d 993]

No. 94-162

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 27, 1995

*Dennis W. Wells* and *Christopher D. Roy* of *Downs Rachlin & Martin*, Burlington, for Plaintiff-Appellant.

*Donna Watts*, Vermont-NEA, Montpelier, for Defendant-Appellee.

**Allen, C.J.** The Milton Board of School Directors (Board) appeals from a decision of the Chittenden Superior Court confirming an arbitrator's award in favor of the members of the Milton Staff Association (Union). We reverse.

The Board and the Union entered a collective bargaining agreement effective from July 1, 1990 through June 30, 1992. At the completion of that term, the parties were unable to agree to a successor contract. The Board continued to pay the Union's members at 1991-92 rates. The Union objected on grounds that its members were entitled to automatic pay increases each year, even after the

agreement expired and filed a grievance in accordance with the procedure set forth in Article VI of the agreement.

The issue was submitted to an arbitrator for binding resolution. The Board challenged the arbitrator's authority to hear the question of post-expiration compensation. The Board argued that the section within the agreement establishing the procedure for negotiating a successor agreement did not mention arbitration. Only the section on grievance procedures provided for the Union to elect arbitration if not satisfied with disposition of a grievance at a certain stage. This section directed that "[t]he arbitrator shall have no power to alter the terms of this agreement." The agreement further stated that its written terms "incorporate[d] the entire understanding of the parties of all matters which were the subject of negotiations."

After a hearing, the arbitrator issued an award and decision, ruling that the implied terms of the agreement included an automatic level increase in wage rates for the Union's members for the school year following expiration of the agreement. On the question of his post-expiration jurisdiction, the arbitrator concluded that the Union had not secured the benefits of an evergreen clause, which would have continued the terms of the existing contract until a successor agreement was negotiated. He concluded, however, that the Union had secured more limited protection by contractualizing its statutory rights under 21 V.S.A. § 1726(a)(5)[1] by stating in the agreement that "[n]egotiations shall take place in good faith in order to reach agreement upon the subsequent Agreement." Because this agreement provision mirrored the language of the statute, the arbitrator concluded that the Union had bargained for the option of pursuing relief via arbitration.[2]

On the merits, the arbitrator concluded that although not explicitly set forth in the agreement, the annual advancement principle "is implicit in the 14-level salary schedule" and "should have been honored by the Board on and after July 1, 1992." The arbitrator added that abandonment of that principle violated the Board's obligation to bargain in good faith under § 1726(a)(5) and Article 5.3 of the agreement.

---

[1] Under 21 V.S.A. § 1726(a)(5) it is an unfair labor practice for an employer to refuse to bargain collectively in good faith with the exclusive bargaining agent.

[2] The arbitrator considered and rejected the argument that the Board's delayed claim of lack of arbitrability amounted to waiver of that point. The Union does not raise a waiver argument on appeal.

The Board moved in superior court to vacate the award, but the court confirmed the award, concluding that the practice of allowing an annual advance to the next salary level was the status quo under the agreement. The court also concluded that the arbitrator did not exceed his power in applying the status quo doctrine. The present appeal followed.

An arbitrator's authority is no broader than the power granted by contract. *R.E. Bean Constr. Co. v. Middlebury Assocs.*, 139 Vt. 200, 209, 428 A.2d 306, 311 (1980). Paragraph 6.6 of the agreement provides that the arbitrator "shall have no power to alter the terms of this agreement." The Union does not argue that the express terms of the agreement provided for automatic increases in support staff wage rates after expiration of the agreement or for continued arbitration. Instead, the Union suggests that the arbitrator's decision is enforceable because doctrines and principles embedded in the case law under § 1726(a)(5) were incorporated by reference into the agreement. The incorporating provisions of the agreement were Articles 1.1 and 5.3, and the doctrine conferring authority over post-agreement negotiations was the status quo doctrine, under which automatic increases provided for in an expired agreement are to be continued during post-agreement negotiations as a matter of bargaining in good faith. See *Windham Southwest Educ. Ass'n, Vermont-NEA/NEA-Readsboro Chapter v. Readsboro Bd. of School Directors*, 15 V.L.R.B. 268, 271-73 (1992), and *Chester Educ. Ass'n v. Chester-Andover School Bd. of Directors*, 1 V.L.R.B. 426, 433-43 (1978). We find no support for this theory in the agreement.

■ Neither Article 1.1 nor Article 5.3 supports a "contractualization" of § 1726 into the agreement; hence, the arbitrator lacked the authority to speak to the post-agreement period. Article 1.1 simply states that "[t]he Board recognizes the Association for the purpose of collective bargaining pursuant to Title 21, Chapter 22 of the Vermont Statutes Annotated as the exclusive representative for collective bargaining with the Board . . . ." This provision does little more than state the obvious – that both parties acknowledge that state law governs their relationship in general. The arbitrator's conclusion that a reference to a governing statute incorporates unrelated judicial or quasi-judicial doctrine developed anywhere within the statute is unsupported.

■ Reliance on Article 5.3 as a contractualizing mechanism is equally unsound. That provision states "[n]egotiations shall take place

in good faith in order to reach agreement upon the subsequent Agreement." The Union posits, as did the arbitrator, that because both § 1726(a)(5) and the agreement use the concept of good faith, all the other common law principles in case law and statute are incorporated by reference. Neither the text of the agreement nor the history of the negotiations leading up to execution of the agreement can support such a rationale.

■■ The parties contemplated arbitration under specific circumstances; post-expiration negotiations was not one of them. The agreement expressly stated that its written terms incorporated the entire understanding of the parties of all matters which were subject of the negotiations. *Economou v. Vermont Elec. Coop., Inc.*, 131 Vt. 636, 638, 313 A.2d 1, 3 (1973) (we presume contracts contain the entire agreement and the parties intend to be bound by express provisions). We are further persuaded by the Board's argument that it would be illogical "to believe that they would have failed to include language requiring 'automatic' post-expiration pay scale advancement – if there truly was an agreement to that effect." We will not supply terms or embrace a construction that would alter the rights of the parties as expressed in the original agreement. See *Roy's Orthopedic, Inc. v. Lavigne*, 145 Vt. 324, 327, 487 A.2d 173, 176 (1985) (courts shall enforce contracts as written and not rewrite them). Further, § 1726(a)(5) does not impose on contracting parties who include an arbitration clause in their agreement a requirement that they submit post-agreement disputes to arbitration. The parties may not expand an arbitrator's authority to resolve disputes beyond the terms of the agreement simply because the Union and the Board bargain every contract under the umbrella of the bargaining law and all its interpretations.

■ The arbitrator's theory of contractualization of § 1726(a)(5) is misplaced, and the oblique references to the Vermont Municipal Labor Relations Act do not imply a mutual agreement to extend any provision of the agreement beyond its expiration date, including an implied agreement to arbitrate disputes arising after that date. Because the superior court relied on essentially the same rationale as that of the arbitrator, it was in error. Therefore, the arbitrator lacked authority under the agreement to grant the award, the decision of the superior court is reversed and the award vacated. Accordingly, we have no occasion to consider the merits.

*Reversed.*