**Beatrice P. ALLING, Trustee of the Beatrice P. Alling Trust, Plaintiff,**

v.

**C.D. CAIRNS IRREVOCABLE TRUSTS PARTNERSHIP, and Mobil Oil Corporation, Defendants.**

No. 2:95–CV–35.

United States District Court, D. Vermont.

May 9, 1996.

Thomas Emerick McCormick, McCormick, Fitzpatrick, Kasper & Burchard, Burlington, VT, for Beatrice P. Alling.

Richard F. Peterson, Jr., Spokes, Foley & Peterson, Burlington, VT, for C.D. Cairns Irrevocable Trusts Partnership.

Julian R. Goodrich, George Edmund Rice, Jr., Goodrich & Rice, Montpelier, VT, for Mobil Oil Corporation.

## OPINION AND ORDER

SESSIONS, District Judge.

### I.  Introduction

This action is in the nature of an interpleader.  Both Defendants claim an interest in the property at the intersection of Kennedy Drive and Hinesburg Road in South Burlington, Vermont.  That property is subject to a lease agreement between Plaintiff and Defendant Mobil Oil Corporation ("Mobil"), which provides Mobil with a right of first refusal.

Pursuant to the terms governing the right of first refusal, if Plaintiff receives a bona fide offer from or makes a bona fide offer to a ready, willing and able buyer, she must give notice to Mobil.  The notice must specify the name and address of the purchaser and the price and terms of the offer.  See ¶ 9 of Def. Cairns' Trial Ex. B.  It also must be accompanied by an affidavit that the sale is proposed in good faith.  Thereafter, Mobil has thirty days from receipt of the notice to exercise its right to purchase the property on the same terms and conditions as the prospective bona fide purchaser.  Mobil's notice of its desire to exercise its right of first refusal is deemed effective when given.  See ¶ 16 of Def. Cairns' Trial Ex. B.

On December 12, 1995, the Court held a bench trial to determine the date on which Plaintiff provided proper notice to Mobil of a bona fide offer from Defendant C.D. Cairns Irrevocable Trusts Partnership ("Cairns") and the concomitant timeliness of Mobil's response purporting to exercise its right of first refusal.  Specifically, the factual and legal issues before the Court are: 1) whether Plaintiff's first notice to Mobil included a copy of the required good faith affidavit; 2) whether a copy, rather than the original, was sufficient to satisfy the terms of the lease; and 3) whether there are grounds for waiving the thirty day time limit.

Upon consideration of the evidence presented at trial, and for the reasons set forth below pursuant to Fed.R.Civ.P. 52(a), the Court orders judgment to be entered in favor of Cairns.

### II.  Findings of Fact

The Court finds from the evidence as follows [1]:

1.  Plaintiff Beatrice Alling is a resident of Williston, Vermont.  She is the successor-in-interest and named trustee of the property at the intersection of Kennedy Drive and Hinesburg Road.

2.  Defendant Cairns is a Vermont partnership with a principal place of business in South Burlington, Vermont.  Among other things, it acquires real property for the operation of gasoline service stations.

3.  Defendant Mobil is a New York corporation with a principal place of business in Fairfax, Virginia.  Mobil is engaged in the petroleum business, and it currently operates the gasoline service station on the subject property at the corner of Kennedy Drive and Hinesburg Road.

4.  This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  See Paper # 25.

5.  The lease agreement between Plaintiff and Mobil stems from the following course of events.  On August 29, 1966, George Alling, the predecessor-in-interest to the property, entered into an agreement to lease the property to Shell Oil Company from September 18, 1967, through September 30, 1982.  With Mr. Alling's consent, Shell Oil Company as-

1.  The parties have submitted a list of stipulated facts, on which the Court is relying.  See Paper # 35.

signed its rights under the lease to Mobil on November 20, 1978.

6. On September 10, 1982, Mr. Alling, and the Farmer's Trust Company, trustees, then owners of the property, and Mobil modified the lease, granting Mobil an option to renew the lease for two additional five year terms through September 30, 2002. They also made rent adjustments, included a provision obligating Mobil to indemnify the lessor for claims resulting from its negligence, and stipulated that structures on the property, except for exterior pumps, display units, signs, and lights, would become the property of the lessor at the termination of the lease or any extension thereof.

7. Between 1982 and the events precipitating the instant action, the only change affecting the lease was the passage of the ownership interest to the Beatrice P. Alling Trust, of which Plaintiff is trustee.

8. The lease provides Mobil with a right of first refusal. The relevant provision states:

9. PURCHASE REFUSAL. If at any time during the primary term, any extension period or any tenancy after either, Lessor [Plaintiff] receives from a ready, willing and able purchaser, an acceptable bona fide offer to purchase, or makes a bona fide offer to sell to such purchaser, the premises or any ·part thereof or any property which includes all or part of the premises: Lessor shall give Shell [now Mobil] notice, specifying the name and address of the purchaser and the price and terms of the offer, accompanied by Lessor's affidavit that the proposed sale is in good faith. Shell shall thereupon have, in addition and without prejudice to its rights under article 8, the prior option to purchase the premises or the part thereof or the entire property covered by such offer, at the price and on the terms of the offer but subject to the terms provided in article 10, which option Shell may exercise by giving Lessor notice within thirty (30) days after Shell's receipt of Lessor's notice of the offer. Shell's failure at any time to exercise its option under this article shall not affect this Lease or the continuance of Shell's rights and options under this article or any other article hereof.

9. There is also a provision in the lease governing notices. It provides:

16. NOTICES. Notices hereunder shall be given only by registered letter or telegram and shall be deemed given when the letter is deposited in the mail or the telegram filed with the telegraph company, postage or charges prepaid, and addressed to the party for whom intended at such party's address first herein specified, or at such other address as such party may have substituted therefore by proper notice to the other.

10. On November 2, 1994, Plaintiff and Cairns entered into a real estate purchase contract ("Alling–Cairns contract") for the sale of the property for $607,595.00. This contract was subject to the terms of the lease, including Mobil's right of first refusal. Plaintiff and Mr. Cairns, acting on behalf of Cairns Trust, signed duplicate originals of the real estate purchase contract. The same day, they executed duplicate originals of the affidavit of good faith.

11. Later that day, Ronald Schmucker, Plaintiff's attorney in the Alling–Cairns transaction, sent two letters of notification to Mobil. In preparing the first notice, Mr. Schmucker took the following steps. He, along with his secretary, Shelly Baxter, compiled and collated four sets of documents, including the Alling–Cairns contract, the affidavit of good faith, and appropriate individual cover letters. He prepared a set of documents for Plaintiff, Mr. Cairns, Mobil, and himself. His intent was to create an original set of the documents for Plaintiff and photocopies of the documents for himself. Mr. Cairns was to receive an original copy of the Alling–Cairns contract and a photocopy of the good faith affidavit. Mobil was to receive a photocopy of the Alling–Cairns contract and an original copy of the good faith affidavit. After each set of documents was assembled, Mr. Schmucker fastened them together with a binder clip. During this process, Mr. Schmucker used the top of a series of file cabinets as his work station. The file cabinets are located a few feet from the copier and a few feet from Ms. Baxter's desk.

12. Mr. Schmucker mailed Mobil's set of documents first. Prior to placing the documents in an envelope, he turned down the sheets of paper at the top to make certain that all the documents he intended to enclose were included. At the front of the packet was a cover letter,[2] referencing, inter alia, paragraph nine of the Mobil lease, and explaining that a copy of the Alling–Cairns contract[3] and the affidavit of good faith were enclosed. After Mr. Schmucker assured himself that all the documents were included, he instructed Ms. Baxter to put them in an envelope addressed to Mobil.

13. Mr. Schmucker then took the envelope to the Post Office and sent it by way of overnight mail, return receipt requested. Mobil received this packet of documents on November 3, 1994.

14. Upon returning from the Post Office on November 2, 1994, Mr. Schmucker continued readying the remaining sets of documents for mailing. As he was doing so, he noticed the original affidavit of good faith in one of the other piles of documents. He then realized that he had sent a photocopy of the affidavit of good faith to Mobil, rather than the original as he had intended.

15. Mr. Schmucker and Ms. Baxter initially had made two photocopies of the good faith affidavit. One of the photocopies was in the pile Mr. Schmucker kept for himself. The other was not found in the office. Having checked only the top of each sheet of paper before he sent it, Mr. Schmucker neglected to note whether the signatures at the bottom of each document he sent were the original or a photocopy.

16. Mr. Schmucker then drafted a second cover letter to Mobil enclosing the original good faith affidavit. This letter was also dated November 2, 1994. In it, he referred to his first letter of the same date. He stated:

> The attached November 2, 1994 letter with enclosures was mailed to Mobil Oil Corporation in Fairfax, Virginia by Express Mail on November 2, 1994.
>
> The original Affidavit of Good Faith was mistakenly omitted from that correspondence and apparently a copy was sent. The original Affidavit of Good Faith is herewith being provided.

Def. Cairns' Trial Ex. F.

17. This second letter was sent on November 2, 1994, by certified mail, return receipt requested. Mobil received it on November 7, 1994.

18. On November 4, 1994, Mr. Schmucker called K.K. "Kiki" Stone. *See* Def. Cairns' Trial Ex. H. Ms. Stone is employed by Trammell Crow Corporate Services, which currently provides Mobil with real estate services. Ms. Stone is responsible for "new-to-industry" deals and works in the Real Estate Division at Mobil's headquarters in Fairfax, Virginia. Mr. Schmucker had been told by Plaintiff's son that the family had dealt with Ms. Stone in the past on real estate matters. Thus, Mr. Schmucker called Mobil's general number, asked for Ms. Stone, and was routed to her voice mail. Mr. Schmucker left a message, identifying himself and relaying the purpose of his call, including a brief explanation of the Alling–Cairns contract and Mobil's interest in the property. Ms. Stone did not return his call nor did any other Mobil representative.

19. Neither of the letters from Mr. Schmucker to Mobil were addressed to a

---

**2.** Mr. Schmucker's letter of November 2, 1994, to Mobil reads as follows:

Enclosed herewith is a copy of a Real Estate Purchase Contract dated November 2, 1994 by and between Beatrice P. Alling Trust (successor to George Dana Alling and Farmers Trust Company Trustees) as Seller and C.D. Cairns Irrevocable Trust Partnership as Buyer.

The Contract concerns referenced real estate, and Mobil Oil Corporation is being provided with a copy in conformity with Paragraphs 9, 10 and 11 of a Lease dated August 29, 1966 between George Dana Alling as Lessor and Shell Oil Company as Lessee. Mobil Oil Corporation is the successor Lessee to referenced property as a result of Assignment of Lease dated November 20, 1978.

Also enclosed herewith is an Affidavit of Good Faith also dated November 2, 1994 executed by the aforesaid contracting parties.

The undersigned is the attorney for the Seller, Beatrice P. Alling Trust, Beatrice P. Alling, Trustee.

Def. Mobil's Trial Ex. 3.

**3.** The Alling–Cairns contract also refers to the parties having executed an affidavit of good faith.

named recipient. In accordance with Mobil's internal mail forwarding procedures, Joseph Russo signed the receipts for these letters. Mr. Russo is the mail clerk, who is responsible for signing all receipts for mail received by Mobil, and for affixing a label thereto indicating the date of receipt. When Mr. Russo receives certified mail that is not addressed to a particular individual, he directs it to Tyrone Franklin. Mr. Franklin is responsible for the "unknown mail," which he opens and reads so as to learn the intended recipient. Upon making this determination, he places the mail back in the envelope, staples the envelope shut, and routes it to the appropriate office. Following this procedure, Mr. Franklin directed Mr. Schmucker's letters to the Real Estate Division.

20. All incoming mail to the Real Estate Division is received by the receptionist, who removes it from the envelope, which is then discarded. Next, the receptionist sorts the mail and distributes it to the appropriate mail box.

21. When Mr. Schmucker's first letter arrived in the Real Estate Division, the receptionist routed it to Ms. Stone. Sometime after November 9, 1994, but prior to December 5, 1994, Ms. Stone gave this letter and its attachments to Jennifer Smith Malloy.

22. Like Ms. Stone, Ms. Malloy works for Trammell Crow in providing real estate services to Mobil. Her responsibilities include analyzing whether Mobil should exercise its preemptive rights, such as a right of first refusal. Ms. Malloy's work station is down the corridor from Ms. Stone's with four or five work stations in between.

23. The receptionist directed Mr. Schmucker's second letter to Ms. Malloy. Ms. Malloy received this letter on November 9, 1994, skimmed it and placed it in her in-box for further investigation. Likewise, when she later received Mr. Schmucker's first letter from Ms. Stone, she put it in her in-box for future review. Mr. Schmucker's letters and their enclosures languished in Ms. Malloy's in-box until December 5, 1994.

24. On November 18, 1994, Mr. Schmucker called Ms. Stone again. He proceeded, as he had previously, by calling Mobil's general number and being transferred to Ms. Stone's voice mail. He left a message similar to the one he had left on November 4, 1994, identifying himself and referring to the Alling–Cairns contract and its relevance to Mobil. Ms. Stone did not return his call nor did any other Mobil representative.

25. On December 5, 1994, Ms. Malloy went through all of the documents in her in-box, at which time she came across Mr. Schmucker's letters. When she found Mr. Schmucker's first letter, the copy of the good faith affidavit was not attached.

26. Based on the available evidence, the Court finds it more likely than not that Mr. Schmucker, in his first mailing to Mobil, included a copy of the good faith affidavit, which was later misplaced when it reached Mobil.

27. Within ten minutes of reviewing Mr. Schmucker's letters on December 5, 1994, Ms. Malloy understood their import. Ms. Malloy performed some preliminary research on the gasoline service station and promptly contacted David Fisher. Mr. Fisher, then Administrative Manager for Mobil's Real Estate Division, had the authority to exercise preemptive rights on behalf of Mobil. On December 5, 1994, a few hours after Ms. Malloy's initial review of Mr. Schmucker's letters, Mr. Fisher notified Mr. Schmucker that Mobil wished to exercise its right of first refusal with regard to the property.

28. In late 1984 and early 1985, Mobil replaced the service station which Shell had constructed on the property with a new building and made other improvements to the property.

29. Mobil is depreciating the fixed assets which it constructed on the property so that their book value will be zero by the end of the lease term in 2002. Fisher Dep. at 41.

30. Mobil and Cairns have tendered performance to Plaintiff, but Plaintiff has refused performance to both.

### III. Conclusions of Law

Having found by a preponderance of the evidence that Mr. Schmucker's first letter contained a copy of the good faith affidavit, the Court now addresses whether a copy

complied with the notice requirements of the lease and whether the thirty day time limit should be strictly enforced.[4] Mobil contends that the intent of the parties was that the good faith affidavit be an original, rather than a photocopy. Alternatively, Mobil argues that under principles of equity, its failure to conform to the thirty day time limit should be excused.

■ Paragraph nine of the Mobil lease provides, in pertinent part, "Lessor [Plaintiff] shall give Shell [now Mobil] notice, specifying the name and address of the purchaser and the price and terms of the offer, accompanied by Lessor's affidavit that the proposed sale is in good faith." In interpreting a contract provision, a court must afford it its plain, ordinary meaning. *Vogel v. W.A. Sandri, Inc.*, 898 F.Supp. 254, 257 (D.Vt.1995) (applying Vermont law). The court will not look beyond the face of the contract unless there is an ambiguity. *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81 (1988). Nor will the court insert new terms into the contract. *Milton Board of School Directors v. Milton Staff Ass'n, Local 130 VEA/NEA*, 163 Vt. 240, 656 A.2d 993, 995 (1995); *Vermont State Colleges Faculty Fed., Local No. 3180, AFL–CIO v. Vermont State Colleges*, 141 Vt. 138, 144, 446 A.2d 347 (1982) (a court's duty is to construe contracts, not to make or remake them for the parties).

■ The plain language of paragraph nine mandates that "an affidavit" must accompany the lessor's notice. The parties had the opportunity when they made the contract to stipulate that an original affidavit was required. They did not do so, and the Court declines the invitation to impose that additional requirement now. By providing a copy of the good faith affidavit, Plaintiff met the requirements of paragraph nine. Accordingly, Mobil's right of first refusal was triggered on November 3, 1994, rendering its response of December 5, 1994, untimely.

■ Even if the Court were to conclude that an original copy of the good faith affidavit was required, it still would hold that Plaintiff satisfied the notice requirements of the Mobil lease, in accordance with the theory of substantial compliance. *See Shell Oil Co. v. Jolley*, 130 Vt. 482, 489, 296 A.2d 236 (1972). The theory of substantial compliance allows a court, acting in equity, to declare a contract provision satisfied although a party has made minor departures from the technical requirements of the provision. *See Vermont Structural Steel Corp. v. Brickman*, 126 Vt. 520, 523, 236 A.2d 658 (1967) (citing *Kelly & Bragg v. Town of Bradford*, 33 Vt. 35, 38 (1860)); *Vincenzi v. Cerro*, 186 Conn. 612, 615, 442 A.2d 1352 (1982).[5] For example, the *Jolley* court held that the requirement in a lease with a right of first refusal stipulating that notice of a proposed sale to a third party must be given in writing was satisfied when the lessor orally notified the lessee-optionee of the proposed sale. *Id.*

Here, Plaintiff substantially complied with the notice requirements through a combination of factors. First, Mr. Schmucker, on behalf of Plaintiff, included a copy of the good faith affidavit in his first packet of documents to Mobil.[6] Moreover, Mr. Schmucker sent a cover letter[7], referencing both paragraph nine of the Mobil lease and the good faith affidavit, attached the Alling–Cairns contract, with a provision that the parties had executed a good faith affidavit, and made a follow-up phone call to Ms. Stone on November 4, 1994. Based on these factors, the Court finds that Mobil had adequate

---

**4.** Because this is a diversity action, the Court shall apply state law to resolve the dispute. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

**5.** While the theory of substantial compliance is applied most often in building and construction contracts, it may be applied in the case of any kind of contractual obligation to perform. 17A Am.Jur.2d § 631 (1991).

**6.** Even if the Court had not made this factual finding, the remaining factors would likely be sufficient to put Mobil on notice of its preemptive right.

**7.** Contrary to Mobil's characterization of Mr. Schmucker's cover letter as unintelligible, the Court finds that it was written in such a way as to put the reader on notice of the preemptive right. *Cf. Burleigh v. Mactier*, 108 A. 84, 85 (N.J.Ch.1919). In fact, Ms. Malloy did understand the purpose of the cover letter when she read it on December 5, 1994.

notice of the proposed sale to Cairns no later than November 4, 1994. Again, Mobil's response of December 5, 1994, was untimely.

 Mobil next argues that the Court should not strictly enforce the thirty day time limit in the contract, thereby excusing Mobil's delay. A right of first refusal in effect becomes an option with the appearance of a bona fide purchaser. *Bricker v. Walker*, 139 Vt. 361, 364, 428 A.2d 1129 (1981). As a general rule, time is of the essence in an option contract. *Life Preserver Suit Co. v. National Life Preserver Co.*, 252 F. 139, 141 (2d Cir.), *cert. denied*, 248 U.S. 571, 39 S.Ct. 11, 63 L.Ed. 426 (1918); *Cities Service Oil Co. v. National Shawmut Bank*, 342 Mass. 108, 110, 172 N.E.2d 104 (1961); A. Corbin, Corbin on Contracts § 1177, at 320 (1951 & Supp.1994) (in an option contract, time is generally regarded as of the essence, even in equity). Accordingly, Mobil waived its right of first refusal by not responding until December 5, 1994.

In limited circumstances, courts may employ their powers of equity to excuse untimeliness in the performance of a contract. *See Sowles v. Hall*, 62 Vt. 247, 254, 20 A. 810 (1890); *see also Sy Jack Realty Co. v. Pergament Syosset Corp.*, 27 N.Y.2d 449, 453, 267 N.E.2d 462, 318 N.Y.S.2d 720 (1971); *F.B. Fountain Co. v. Stein*, 97 Conn. 619, 624, 118 A. 47 (1922). The *Sowles* court stated:

> it might be laid down as a general rule that where the party who applies for specific performance has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient excuse for his [or her] delay, the court will not decree a specific performance.

*Id.* In the case at bar, the Court is unable to discern a "sufficient" excuse for Mobil's delay. Rather, there is ample evidence of Mobil's own dilatory actions precipitating its untimeliness, including Ms. Stone's failure to turn over Mr. Schmucker's first letter to Ms. Malloy immediately, Ms. Malloy's failure to read and review the contents of her in-box, and the failure of any Mobil representative to respond to Mr. Schmucker's phone calls. Moreover, the Court is unpersuaded by Mobil's argument that it stands to lose a sub-

stantial investment if it is not awarded the property, particularly in light of the lease provision stating that most physical improvements thereto are to become the property of the lessor at the termination of lease.

## IV. Conclusion

For the reasons set forth above, the Court hereby ORDERS judgment to be entered in favor of Cairns.