2010 VT 49

# William Bischoff, David Bischoff and Peter Bischoff v. Donald L. Bletz, Sr., Bruce Van Guilder and Rodney White

[998 A.2d 705]

No. 09-192

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed May 21, 2010

*Andrew M. Carter* and *Erin H. Gallivan* of *Meub Gallivan Carter & Larson, Attorneys, P.C.*, Rutland, for Defendant-Appellant White.

*Charles D. Hickey* of *Law Office of Charles D. Hickey, PLC*, St. Johnsbury, for Defendant-Appellee Van Guilder.

*John J. Welch, Jr.* of *John J. Welch, Ltd.*, Rutland, for Defendant-Appellee Bletz.

¶ 1. **Dooley, J.** Rodney White appeals from a superior court judgment requiring that he pay the full purchase price offered by third-party purchasers William, David and Peter Bischoff (the Bischoffs) as a requirement of exercising his right of first refusal for certain real property owned by sellers Donald L. Bletz, Sr. and Bruce Van Guilder (sellers). We affirm.

¶ 2. This is the second appeal to arise from this real property dispute. Most of the salient facts are set forth in our earlier ruling in *Bischoff v. Bletz*, 2008 VT 16, 183 Vt. 235, 949 A.2d 420, and may be summarized as follows. In 1978, White acquired a deeded right of first refusal in two parcels, a large parcel and a smaller parcel, owned by sellers' predecessors in interest. Their agreement required that sellers provide written notice upon receipt of any bona fide offer for the properties, and that White then file within twenty days "written acceptance of such offer on the same terms and conditions as the original bona fide offer" or the right of first refusal would "be deemed to be null and void." *Id.* ¶ 2.

¶ 3. In 2003, with no notice to White, sellers agreed to sell the subject properties to the Bischoffs. The sale did not close, but the parties subsequently entered into option agreements for both properties. The agreements provided that, if the options were exercised, the option payments would be credited toward the purchase price. The Bischoffs ultimately made option payments totaling $26,220 and $3798 respectively for the two properties before exercising their purchase options in April 2006. Consistent with the option agreements, each of the purchase and sale contracts credited the option payments towards the purchase price, which was $215,000 for the larger property and $31,000 for the smaller property. This left a balance to be paid at closing of $188,780 for the former and $27,202 for the latter. Each contract also provided that, in the event of sellers' default, the Bischoffs could terminate the agreement and "receive back all monies previously paid pursuant to this Purchase and Sale Agreement and the Option Agreement entered into by and between the parties pertaining to the property" in addition to pursuing all other legal and equitable remedies provided by law.

¶ 4. White received notice of the contract for sale tendered by the Bischoffs in April 2006 and informed sellers of his intent to exercise his right of first refusal but "sought immediate clarification . . . regarding the actual purchase price" in view of the

credits to be received at closing. *Id.* ¶ 7. Sellers apparently planned to go forward with the sale to White, but before any closing could occur, the Bischoffs filed a complaint for breach of contract and misrepresentation against sellers, alleging — among other claims — that White had waived his right of first refusal by failing to meet their offer. At sellers' request White was joined as a necessary party to the suit.

¶ 5. The trial court ultimately granted the Bischoffs' motion for summary judgment, ruling that White had not validly exercised his right of first refusal because he had not accepted the third-party offers on identical terms. We reversed on appeal, however, holding that the Bischoffs lacked standing to seek a declaration of White's rights under his agreement with sellers' predecessors in interest. *Id.* ¶ 16. We remanded for further proceedings, noting that disputes remained as to whether White had effectively exercised his right of first refusal. *Id.* ¶¶ 24-25.

¶ 6. On remand, the trial court granted White's motion to bifurcate the proceedings and resolve the issues relating to the right of first refusal before addressing the Bischoffs' claims against sellers. Thereafter, the court upheld White's right of first refusal and ruled that he was required to offer the full purchase price for the two properties of $31,000 and $215,000 respectively. Although the dispute between the Bischoffs and sellers remained to be resolved, the trial court granted a motion to enter final judgment. Sellers have not appealed the court's decision that White properly exercised his right of first refusal. White appeals the decision that he must pay the full purchase price for each parcel.

¶ 7. White contends that he was required to match only the "net price" to be tendered at closing, i.e., the purchase price less the option payments, in order to effectively exercise his right of first refusal. Sellers maintain that the trial court correctly concluded that nothing less than the full purchase price was sufficient to match the Bischoffs' offer. Although the parties devote considerable attention to the policies and equities underlying their respective positions, the issue essentially turns — in our view — on the meaning and intent of the right-of-first-refusal agreement, a question of law which we review de novo. See *Dep't of Corr. v. Matrix Health Sys., P.C.*, 2008 VT 32, ¶¶ 11-12, 183 Vt. 348, 950 A.2d 1201 (we review "the trial court's interpretation of the

parties' contract de novo" and seek, "[i]n construing a contract, . . . to implement the parties' intent"); see also *St. George's Dragons, L.P. v. Newport Real Estate Group, L.L.C.*, 971 A.2d 1087, 1098 (N.J. Super. Ct. App. Div. 2009) ("[T]he terms of a right of first refusal are to be construed employing the same rules of construction applicable to any other type of contract.").

■ ¶ 8. A right of first refusal becomes an option to purchase once a purchaser makes an offer acceptable to the seller. See *Cameron v. Double A. Servs., Inc.*, 156 Vt. 577, 583, 595 A.2d 259, 262 (1991). The holder of the right of first refusal must exercise the option according to its terms in order to generate a binding contract to purchase. *Bricker v. Walker*, 139 Vt. 361, 364, 428 A.2d 1129, 1130 (1981). As in this case, the price term can be a requirement that the holder of the right of first refusal match the price from the prospective purchaser. *Krupinsky v. Birsky*, 129 Vt. 400, 405, 278 A.2d 757, 760 (1971). As we set out above, the right of first refusal required White to purchase the properties "on the same terms and conditions as the original bona fide offer."

■ ■ ¶ 9. The trial court held that White would purchase the properties "on the same terms and conditions" as the Bischoffs' offer only if he paid the full price. We agree. White focuses on the net cost to the Bischoffs, but ignores all of the terms and conditions of the offer. The Bischoffs agreed to the full price of the parcels, using the option payments as part of the price, as the option agreement allows. In essence, the option payments became down payments on the purchase. White seeks to purchase without the down payments. Without paying full price, his purchase will not match the terms and conditions of the Bischoffs' offer. See *W. Tex. Transm'n, L.P. v. Enron Corp.*, 907 F.2d 1554, 1564 (5th Cir. 1990) (noting that the right-of-first-refusal agreement did "not define the phrase 'terms and conditions' to mean only the price suggested by a prospective purchaser" and holding that other terms must be complied with as well). Sellers' argument would be stronger if the agreement here had simply stated, as others have, that White's obligation was to match the "price" of any bona fide offer. See, e.g., *Kroehnke v. Zimmerman*, 467 P.2d 265, 266 (Colo. 1970) (lease granted "the privilege of purchasing [the property] for the same price for which the lessors would be willing to sell to any other person"); *Schmidt v. Downs*, 775 P.2d 427, 428 (Utah Ct. App. 1989) (contract granted right of first refusal to purchase

property "at whatever price the [owners] determine to sell said property at" (emphasis omitted)); *Wilson v. Whinery*, 678 P.2d 354, 355 n.1 (Wash. Ct. App. 1984) (agreement granted "right to purchase the property . . . for a price not to exceed $3,500.00, or for such lesser price as may be offered to Grantors by a bona fide purchaser"). Such language is notably absent from the agreement here, and we are not at liberty to redefine its terms. See *W. Tex. Transm'n*, 907 F.2d at 1564 (explaining that some contracts require merely that the holder match the "price" offered by a third-party and observing that, had the parties "intended to restrict the phrase 'terms and conditions' to mean only price, the parties could have executed an agreement similar to those construed in these other cases"); *Milton Bd. of Sch. Dirs. v. Milton Staff Ass'n, Local 130 VEA/NEA*, 163 Vt. 240, 244, 656 A.2d 993, 995-96 (1995) (court must enforce contracts as written and not rewrite them). The language of White's agreement with sellers' predecessors, therefore, supports the conclusion that their intention was to require that White provide an offer equivalent to any third-party offer incorporating all of its terms and effects, including the option-payment set-off.

¶ 10. White argues that we should treat the option payments like a broker's commission that would have to be paid in the case of a sale to a new purchaser but not in the case of the exercise of a right of first refusal. The principal case from which White argues is *Reef v. Bernstein*, 504 N.E.2d 374 (Mass. App. Ct. 1987), where the contract of sale of the property to the prospective purchaser included a provision that required the seller to pay a broker's commission of $34,000 out of the proceeds, but the court found that the seller was not obligated to pay the broker if the holder of the right of first refusal purchased the property. The court held that the holder of the right of first refusal could deduct the broker's commission from the price in the third-party offer since the "normal expectation[] of the seller and the holder of the first refusal right" is "that the seller should be put in the *same position* as if he had accepted the triggering offer." (emphasis added). *Id.* at 377. As one court has explained, the parties generally assume that if the holder tenders "a proposal to exercise the right of first refusal which was *exactly the same in net effect* to the [seller] as the triggering offer, the right of first refusal would be deemed exercised." *C. Robert Nattress & Assocs. v. CIDCO*, 229 Cal. Rptr. 33, 43 (Ct. App. 1986) (emphasis added).

Thus, in *Nattress* the court held that "it could not reasonably have been anticipated by any party that to meet the [third-party] offer would require an offer *more* favorable in net effect to the owner than the [third-party] offer itself." *Id.* (emphasis added). We note, however, that many courts have not followed this rationale. See *David Meyers, Inc. v. Anderson*, 739 P.2d 102, 105 & n.10 (Wash. Ct. App. 1987) (citing contrary decisions and holding that a tenant's deduction of the amount of a broker's commission precluded his offer from constituting a proper exercise of his right of first refusal).

¶ 11. We need not decide whether we would follow the broker's commission cases relied upon by White because they would not suggest a different result in this case. In the part of this case that is unresolved, the Bischoffs have sought damages, including the return of their option payments, from sellers. Sellers have conceded that they will be required to return the option payments to the Bischoffs when the sale to White is finalized. Therefore, if White were allowed to deduct the option payments in this case, sellers would receive *less* than they would have received from a sale to the Bischoffs, contrary to the normal expectation of the parties that the "net effect" of the two offers should be "the same." *Nattress*, 229 Cal. Rptr. at 43. The courts in the analogous broker commission cases recognized this potential anomaly in holding that, "if a seller is obligated to pay a brokerage commission and remains liable for the commission after a right of first refusal is exercised, the exercise should include the amount of the commission." *Reef*, 504 N.E.2d at 376; accord *Nattress*, 229 Cal. Rptr. at 43 (noting that the question may turn on whether the seller remains obligated to pay a commission even if the third-party sale falls through).

*Affirmed.*