2014 VT 88

## R. Joseph O'Rourke, et al. v. Alfred W. Lunde and The Housing Group Limited Partnership

[104 A.3d 92]

No. 13-364

Present: Skoglund, Robinson and Crawford, JJ., and Teachout, Supr. J., and Zimmerman, Supr. J. (Ret.), Specially Assigned

Opinion Filed August 8, 2014

*James B. Anderson* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiffs-Appellees.

*Brice Simon* of *Breton & Simon, PLC*, Stowe, for Defendant-Appellant Lunde.

¶ 1. **Crawford, J.** This is a dispute between a general partner and limited partners over the proceeds from the dissolution of their partnership. Appellant Alfred Lunde seeks to reverse an arbitration award and a trial court order that assessed attorney's fees and receivership fees and costs against his share of the partnership assets. We affirm on the legal issues, but remand for a further hearing on a narrow issue regarding the amount of attorney's fees assessed against Lunde.

¶ 2. The record reveals the following undisputed facts. In 1979, the parties entered into a limited partnership agreement. The purpose of the partnership was to purchase and manage a twenty-five-unit Section 8 apartment building for elderly residents in Morrisville, Vermont. Lunde was the general partner and plaintiffs were limited partners.

¶ 3. The partnership agreement was for a thirty-year term that expired on December 31, 2009. At that time, the general partner was to liquidate the partnership's assets "as promptly as is

consistent with obtaining the fair value thereof." The agreement called for fifty percent of the net proceeds to be distributed to the general partner and the remainder to be distributed to the limited partners. The partnership agreement included an arbitration clause that required arbitration of "[a]ny dispute or controversy arising in connection with this Agreement or in connection with the dissolution of the Partnership."

¶ 4. Lunde did not promptly liquidate the partnership's assets after the agreement expired, and in February 2011 the limited partners filed suit in superior court seeking to have a receiver appointed to wind up the partnership, liquidate the assets, and distribute the proceeds. In March 2011 the trial court appointed a receiver who proceeded to wind down the business and sell the assets. The receivership was initially limited in nature and permitted Lunde to remain as general partner for purposes of day-to-day administration of the apartment complex. However, a few months later the court removed Lunde as general partner after he failed to cooperate with the receiver, jeopardizing both the reauthorization of the apartment complex as Section 8 housing and the sale of the asset.

¶ 5. In January 2012, Lunde filed a pro se demand for arbitration with the American Arbitration Association (AAA). Plaintiffs filed a motion to stay the arbitration. The court denied the motion, holding that the arbitration clause governed the parties' dispute. The court's order denying the motion to stay created two exceptions for issues that it reserved for its own decision. These were plaintiffs' claim of fraudulent conveyance concerning the transfer of certain funds by Lunde, and plaintiffs' claim for attorney's fees "incurred in connection with all proceedings [in the trial court] with respect to the application to appoint a Receiver, through to conclusion of the Receiver's duties pursuant to court order(s) . . . ."[*]

¶ 6. The AAA appointed an arbitrator, who issued a scheduling order for discovery and set a hearing date of November 13, 2012. Lunde emailed the arbitrator the night before the hearing asking for a continuance for medical reasons. He did not attend the hearing. The arbitrator decided to proceed in Lunde's absence,

---

[*] The fraudulent conveyance claim was ultimately dismissed after the funds at issue were returned to the partnership. It led to no award of damages or claim for attorney's fees and plays no role in this appeal.

but kept the record open for an additional ten days to permit Lunde to submit evidence from a medical doctor that he was unable to attend the hearing for medical reasons as well as any other evidence regarding his claim. Lunde did not submit any supplemental evidence.

¶ 7. The arbitrator issued an award in January 2013, which determined the amount of the proceeds on hand to be distributed to the partners. The arbitrator ruled that Lunde's fifty-percent partnership share was "to be surcharged with the Receiver's fees, AAA costs and arbitrator fees, and [plaintiffs'] attorney's fees in this arbitration." In conformance with the court order denying the stay of arbitration, the arbitrator made no finding about the final amount of attorney's fees. The arbitration award reduced Lunde's partnership share by $150,127 in attorney's fees, receivership expenses, and arbitration costs already paid out of partnership assets, plus $60,323 in pending claims for these expenses. The total surcharge was $210,450.

¶ 8. The arbitrator noted that he was unable to determine with any certainty how much of the attorney's fees already incurred and paid were attributable to the arbitration proceeding. He found that all such fees were "avoidable had Mr. Lunde performed his required duties under the parties' agreement, and therefore all of which are to be paid by [Lunde]." He left the final determination of the amount of the fees to the superior court.

¶ 9. Plaintiffs moved to confirm the arbitration order. On February 12, 2013 the court issued an entry order directing plaintiffs' counsel to prepare a confirmation order.

¶ 10. On February 22, 2013, Lunde filed a pro se motion asking for additional time to review the arbitration award and seeking to stay the court's February 12 order. Although captioned as a "Notice of Appeal," Lunde indicated to the court that it was in fact a motion to vacate, and the court treated it as such.

¶ 11. On May 22, 2013, the court denied Lunde's motion as untimely under the Vermont Arbitration Act (VAA), which requires a motion to vacate an award to be filed within thirty days after delivery of a copy of the award to the moving party. 12 V.S.A. § 5677(c). The court stated that the award was confirmed, including the surcharge for attorney's fees and receivership expenses. It directed plaintiffs to provide an itemized accounting of additional attorney's fees to the court.

¶ 12. On June 3, 2013 Lunde, now represented by counsel, filed motions seeking to overturn the May 22 order and vacate the arbitration award, and opposing plaintiffs' requests for attorney's fees. On August 7, the court denied the motions. The court issued a final judgment order awarding attorney's fees and receiver's fees to plaintiffs on August 15. The judgment order confirmed the arbitration award in all respects, including the surcharge for attorney's fees for amounts already paid at the time of the arbitration hearing and fees that were payable and reflected in the award. It increased the surcharge amount to include additional receiver's fees and attorney's fees incurred since the date of the arbitration award. This additional surcharge reduced Lunde's share by a further $34,008 over the original surcharge imposed by the arbitrator. Lunde appealed to this Court on September 12, 2013.

¶ 13. As a threshold matter, we must determine whether Lunde's appeal to this Court is timely. A notice of appeal must be filed within thirty days after entry of the judgment being appealed. V.R.A.P. 4(a)(1). Plaintiffs argue that under both the VAA and the Federal Arbitration Act (FAA), an order confirming an arbitration award is immediately appealable. See 12 V.S.A. § 5681(a)(3) ("An appeal may be taken from . . . an order confirming or denying confirmation of an award . . . ."); 9 U.S.C. § 16(a)(1)(D) (containing nearly identical provision). Plaintiffs argue that Lunde was obligated to appeal within thirty days of either the February 12 entry order or the May 22 order, because those were orders confirming the award.

¶ 14. ■ We disagree. The above-cited provisions of the VAA and FAA allow, but do not require, a litigant to appeal an order confirming an award prior to entry of final judgment. This is an exception to the general rule that only final judgments may be appealed. See *Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 104 (1st Cir. 1995) (noting that order confirming arbitration award was appealable in spite of not being final judgment because Congress directed that such orders be immediately appealable). The use of the word "may" indicates that the provisions are permissive, not mandatory. A litigant is not required to immediately appeal an interlocutory order confirming an arbitration award in order to preserve the right to challenge that award.

¶ 15. ■ The February 12 and May 22 orders were interlocutory in nature and did not bring the litigation to a conclusion. The

August 15, 2013 order was a final judgment because it resolved all issues in the case, including the amounts of attorney's fees and receivership fees and costs to be assessed against Lunde. By implication, this judgment incorporated the court's prior rulings. Lunde's September 12, 2013 notice of appeal was therefore timely because it was entered within thirty days of an appealable final judgment.

¶ 16. ■ Plaintiffs also argue that Lunde waived appellate review of the judgment on the arbitration award by signing the partnership agreement, which states that any arbitration award "shall be final and binding on every partner." We find this argument unpersuasive. The partnership agreement does not explicitly waive the parties' right to appeal an arbitration award. It is questionable whether a provision completely barring appellate review would even be enforceable. See *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 829-30 (10th Cir. 2005) (holding that parties may limit right to appeal from federal district court's judgment confirming or vacating award, but expressing doubt that provision restricting *any* judicial review would be enforceable); *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 64 (2d Cir. 2003) (rejecting agreement to waive all judicial review of arbitration award as unenforceable because court always has power to review grounds listed in 9 U.S.C. § 10(a)), *overruled on other grounds by Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 585 (2008). In any event, if parties intend to waive appellate review of an arbitration award, their intention must be clearly and unequivocally expressed in the agreement. *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001). The language cited by plaintiffs does not meet this standard.

¶ 17. ■ Plaintiffs finally argue that Lunde failed to preserve all but one of his individual claims on appeal because he did not raise them below. Generally, issues that are not presented to the trial court cannot be raised on appeal. *Taylor v. Fletcher Allen Health Care*, 2012 VT 86, ¶ 14, 192 Vt. 418, 60 A.3d 646.

¶ 18. On appeal, Lunde claims the following: (1) plaintiffs' lawsuit was barred by the arbitration clause; (2) the superior court lacked jurisdiction to appoint a receiver; (3) the appointment of a receiver violated the business judgment rule; (4) the trial court improperly denied his motion to vacate the arbitration award as untimely, because the thirty-day requirement under the

VAA does not apply to this case, which is governed by the FAA; (5) neither the arbitrator nor the court had a legal basis for assessing receivership and attorney's fees against him; and (6) plaintiffs' law firm is barred from receiving fees for services it provided to the receiver because the firm also represented plaintiffs and therefore had a conflict of interest. Plaintiffs claim that Lunde only challenged the legal basis for the court's award of attorney's fees in relation to the receivership below.

¶ 19. Contrary to plaintiffs' argument, the record clearly demonstrates that Lunde objected to the appointment of a receiver from the outset. At the hearing on plaintiffs' motion to appoint a receiver, Lunde's attorney asked him whether he opposed the appointment of a receiver, and Lunde said that he did. Lunde then proceeded to explain that he felt a receivership was unnecessary because he was working to liquidate the partnership assets through an auction. In addition, at the conclusion of the hearing Lunde's attorney stated that his client opposed the receivership and asked the court to order the parties to arbitrate their dispute.

¶ 20. The question of whether the superior court had jurisdiction to appoint a receiver in light of the arbitration clause was raised, and evidently decided in plaintiffs' favor, by the court itself. Lunde objected to the court's exercise of jurisdiction over the case in his motion to vacate the court's March 2012 order. The overlapping issues of whether the arbitration clause governed plaintiffs' claims and whether it deprived the court of jurisdiction were therefore raised before the trial court. Further, in the same motion Lunde specifically objected that the VAA did not apply to this case because the partnership agreement was signed prior to its enactment in his motion to vacate the court's March 2012 order. The court denied Lunde's motion in its entirety without comment. Having asked for and received a ruling on the jurisdictional issue and the applicability of the VAA, Lunde was not required to renew these arguments after the May 22, 2013 decision in order to preserve them.

¶ 21. ■ There is no evidence, however, that Lunde raised his argument that the appointment of a receiver violated the business judgment rule before the trial court. He also failed to preserve his claim that plaintiffs' law firm should not be paid for its services to the receiver due to a conflict of interest. Lunde makes both of these arguments for the first time on appeal. We therefore decline

to address either argument. "[I]n order to rely upon an argument on appeal, an appellant must properly preserve it by presenting it to the trial court with specificity and clarity." *Progressive Ins. Co. v. Brown*, 2008 VT 103, ¶ 6, 184 Vt. 388, 966 A.2d 666 (quotation omitted).

¶ 22. We thus proceed to the merits. The first issue is whether it was proper for the superior court to exercise jurisdiction over plaintiffs' request to appoint a receiver in light of the arbitration clause.

¶ 23. ■ A receiver is "a ministerial officer appointed by the court to take possession of and preserve the fund or property in litigation." *Underhill v. Rutland R.R.*, 90 Vt. 462, 472, 98 A. 1017, 1020 (1916). As part of its inherent powers, the superior court has equitable jurisdiction to appoint a receiver to hold the property of a business. *In re Dawley*, 99 Vt. 306, 319, 131 A. 847, 851 (1926) ("[W]hen a court exercising a jurisdiction in equity appoints a receiver to hold the property of a corporation, it assumes the administration of the estate . . . ."). Receivers may be appointed to oversee the dissolution of partnerships. *Lyon v. Prescott*, 103 Vt. 442, 445, 156 A. 679, 680 (1931); *Whitcomb v. Whitcomb*, 85 Vt. 76, 79-80, 81 A. 97, 98 (1911).

¶ 24. ■ Lunde claims that the superior court had no power to appoint a receiver in this case because the arbitration clause states that "[a]ny dispute or controversy arising in connection with this Agreement or in connection with the dissolution of the Partnership shall be determined by and settled by arbitration." We disagree that the arbitration clause deprives the court of its inherent power to appoint a receiver in this case.

¶ 25. First, the partnership agreement does not reserve the power to appoint a receiver to the arbitrator, or limit the parties' ability to request a receivership from the court. We find no support in the generic language of the arbitration clause itself for Lunde's argument that the clause divests the trial court of its inherent equitable power to appoint a receiver and grants that power instead to the arbitrator.

¶ 26. ■ Second, we doubt that the arbitrator could even grant this type of relief. The arbitrator's power is limited to the authority granted by the contract. *Milton Bd. of Sch. Dirs. v. Milton Staff Ass'n*, 163 Vt. 240, 243, 656 A.2d 993, 995 (1995). The

arbitrator does not have all the powers of a court. *Blood v. Bates*, 31 Vt. 147, 150 (1858) ("A board of arbitrators is not a court or a judicial tribunal in any proper sense of those terms; it has none of the powers that appertain to courts to regulate their proceedings, or to enforce their decisions."). The appointment of a receiver is considered to be an extraordinary remedy traditionally reserved to the courts. See *Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v. Lowenstein Sandler, P.C.*, 839 A.2d 52, 57-58 (N.J. Super. Ct. App. Div. 2003) (expressing doubt that parties could agree to empower arbitrator to appoint receiver, as receivership is relatively rare form of relief traditionally granted by court, but not deciding point because parties did not agree to do so in case before court); see also *Skirvin v. Mesta*, 141 F.2d 668, 673 (10th Cir. 1944) ("[T]he power to appoint a receiver with authority to take custody and control of property and operate it as a going concern is a delicate one which is jealously safeguarded, and it should be exerted sparingly.").

¶ 27. Lunde argues that the AAA rules give an arbitrator authority to appoint a receiver, citing *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 294 P.3d 125, 132 (Ariz. Ct. App. 2012). In *Sun Valley Ranch*, an Arizona court ruled that an arbitrator had the power to appoint a receiver under the AAA rule permitting arbitrators to impose interim measures deemed "necessary for the protection or conservation of property," as well as the similarly-worded Arizona arbitration statute. *Id.* However, the Arizona decision by no means expresses the settled view. Other courts have rejected similar arguments. See *Marsch v. Williams*, 28 Cal. Rptr. 2d 402, 407 (Ct. App. 1994) (holding that power to appoint receiver is unique to courts and cannot be extended to arbitrators absent legislative action); *Ravin*, 839 A.2d at 57-58.

¶ 28. Furthermore, even if the AAA rules permit an arbitrator to appoint a receiver, they do not prohibit a party from seeking such relief from the court. While the arbitrator has the power to take "interim measures," "including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods," the rules also state that "[a] request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." AAA Commercial Arbitration Rules and Mediation Procedures, R-37(a), (c), available at https://www.adr.org.

Thus, the AAA rules do not support Lunde's argument that an agreement to arbitrate divests the court of its power to appoint a receiver to protect the property of a business.

¶ 29. ■ ■ Lunde finally claims that the court was without jurisdiction to appoint a receiver in this case, citing a provision of the VAA that lists nine specific types of orders the court may enter in relation to an agreement to arbitrate "which is subject to this chapter." 12 V.S.A. § 5671. First, as argued by Lunde and discussed below, the VAA does not apply to this agreement, which was entered into prior to the effective date of the VAA. Second, even if the VAA did apply, the cited provision does not limit the court's power to grant relief that falls outside the scope of the arbitration agreement. We rejected a similar argument in a previous case:

> [D]efendant asserts that the superior court here lacked subject matter jurisdiction over plaintiff's contract and negligence claims as a result of the arbitration clause in the contract. . . . Defendant claims that § 5671 effectively limits or "demarcates the parameters of the superior court's jurisdiction" and by implication divests the court of other authority. However, the superior court is presumed to retain jurisdiction over all civil actions unless the Legislature has clearly indicated to the contrary. Contrary to defendant's assertion, we find nothing in the language of § 5671 or the VAA as a whole that suggests a legislative intent — implied or otherwise — to "oust" the superior court of general jurisdiction over a civil suit arising from a contract containing an arbitration agreement.

*Lamell Lumber Corp. v. Newstress Int'l, Inc.*, 2007 VT 83, ¶ 7, 182 Vt. 282, 938 A.2d 1215. Accordingly, the trial court had jurisdiction over plaintiffs' request to appoint a receiver, and its order appointing a receiver was not void.

¶ 30. ■ ■ We next address whether the trial court erred in denying Lunde's motion to vacate the arbitration award as untimely under the VAA. We have previously ruled that "the VAA applies only to those agreements entered into and executed on or after July 1, 1985." *Preziose v. Lumbermen's Mut. Cas. Co.*, 152 Vt. 604, 607, 568 A.2d 397, 398 (1989). The arbitration clause in

the parties' agreement is not subject to the provisions of the VAA because the agreement was entered into and executed in 1979. Instead, as a transaction "involving commerce," it is governed by the provisions of the FAA. 9 U.S.C. § 2; *Little v. Allstate Ins. Co.*, 167 Vt. 171, 172, 705 A.2d 538, 540 (1997). Lunde filed his motion forty-six days after the award was delivered to him, well within the three-month period allowed by the FAA. See 9 U.S.C. § 12. The trial court therefore erred in denying Lunde's motion to vacate the arbitration award as untimely under 12 V.S.A. § 5677.

¶ 31. We conclude, however, that the court's error was harmless because Lunde's motions following the issuance of the arbitration award provide no valid reason for granting him relief from the arbitration award. At the hearing on Lunde's pro se request to vacate the arbitration award, and in his subsequent opposition to plaintiffs' motion for attorney's fees, Lunde argued that the "American Rule" prohibits the arbitrator from entering an award of attorney's fees in the absence of a fee-shifting provision or some other basis for such an award. See *Knappmiller v. Bove*, 2012 VT 38, ¶ 4, 191 Vt. 629, 48 A.3d 607 (mem.) ("Vermont normally requires parties to bear their own attorney's fees and costs of litigation, absent a statutory or contractual provision to the contrary.").

¶ 32. Lunde is correct that in the absence of an arbitration clause there would be scant authority to support an award of attorney's fees if the dissolution of this limited partnership had been overseen by the court. The partnership agreement itself does not contain a fee-shifting provision. Neither the current limited partnership statute, 11 V.S.A. §§ 3401-3503, nor its predecessor, 11 V.S.A. §§ 1391-1420, repealed by 1997, No. 149 (Adj. Sess.), § 5, contain any provision for awarding attorney's fees to a party in a dispute between partners. A limited partner may recover attorney's fees in a successful derivative action brought in the name of the partnership against a third party, 11 V.S.A. § 3494, but this provision is not applicable here. The general Vermont partnership statute, 11 V.S.A. §§ 3201-3313, only permits the recovery of attorney's fees in the case of the expulsion or "dissociation" of a partner on the basis of actions taken "arbitrarily, vexatiously, or not in good faith." 11 V.S.A. § 3261(i). Even if § 3261(i) applied to this limited partnership, which predates the statute, Lunde was never the subject of a claim for dissociation. The provisions governing dissolution and winding-up of limited partnerships con-

tain no similar provision for attorney's fees. 11 V.S.A. §§ 3471-3474. These provisions would have governed a court-supervised dissolution of the partnership in this case if there had been no arbitration clause.

¶ 33. ▉ A court may use its equitable powers to award attorney's fees "in exceptional cases based on the bad-faith conduct of litigants." *Agency of Natural Res. v. Lyndonville Sav. Bank & Trust Co.*, 174 Vt. 498, 501, 811 A.2d 1232, 1236 (2002) (mem.). "This power must be exercised with cautious restraint, however — only in those exceptional cases where justice demands an award of attorney's fees, such as where a party is unjustly forced to endure a second round of litigation." *Id.* (citation omitted); see also *In re Gadhue*, 149 Vt. 322, 328-29, 544 A.2d 1151, 1154-55 (1987) (holding that litigant who "was compelled to appear twice before the state supreme court in order to obtain relief which should have been forthcoming after the first appearance" was entitled to fees under bad-faith exception to American Rule). The arbitrator in this case made a specific finding that although Lunde breached his contractual and fiduciary duties as general partner, "I do not have sufficient evidence from which I may conclude that Mr. Lunde's failures were in fact willful; they may have been due to physical and/or mental incapacities." A court which made similar findings would have no basis to award fees based on bad faith or contumacious conduct. See *Southwick v. City of Rutland*, 2011 VT 105, ¶ 9, 190 Vt. 324, 30 A.3d 1298 (holding that mere failure by one party to honor terms of agreement requiring another party to bring legal action to enforce agreement was insufficient basis for awarding attorney's fees to prevailing party).

¶ 34. We turn now to the question of the arbitrator's award of legal fees. Due to the decision of the trial court to "reserve" claims for attorney's fees incurred in connection with the receivership to the court, the history of the attorney's fees award is not simple. It is complicated by the presence of two distinct types of fees: fees incurred by the receiver in completing his work and fees incurred by plaintiffs in connection with the civil lawsuit and the arbitration. Because the law firm of Ryan Smith & Carbine represented both plaintiffs and the receiver, the fee awards by the arbitrator and the confirmation award by the court do not distinguish between the two types of legal fees.

¶ 35. The first award of attorney's fees appears in the trial court's December 20, 2011 order authorizing the release of $30,000 to the receiver for payment of his fees.

¶ 36. The next award of attorney's fees appears in the arbitration award. The arbitrator calculated "avoidable costs already paid ($30,000 for attorney's fees, $110,997.68 for Receiver, $9,130 for AAA)." The $30,000 is the same $30,000 previously allowed by the trial court. To these amounts, the arbitrator added additional unpaid receiver's bills ($2,175 and $4,941) and "unpaid atty. fees claimed of $53,206.92." The paid and unpaid amounts totaled $210,450.60. This amount was "surcharged" to Lunde in the arbitrator's decision and therefore decreased his distributive share. The surcharge resulted in a net award to plaintiffs of $1,119,935.22 and a net award to Lunde of $809,842.62 with $63,892.92 undistributed to meet unpaid expenses, including attorney's fees.

¶ 37. The arbitrator noted that he was unable to determine "the portion of attorney's fees attributable solely to this arbitration" and found only that such fees would be approximately $10,000 of the total attorney's fee award. The arbitration award did not further separate the $53,206.92 in unpaid attorney's fees into fees incurred by the receiver and fees incurred by plaintiffs. It determined only that these fees plus the prior award of $30,000 in fees to the receiver were "avoidable" expenses incurred because of Lunde's breach of his "contractual and fiduciary duties."

¶ 38. The final word on attorney's fees came from the trial court. At a hearing on May 13, 2013, the trial judge requested evidence by affidavit concerning the claim for attorney's fees. Counsel for plaintiffs provided an affidavit from an attorney who stated that the fees charged by the Ryan Smith & Carbine firm were reasonable in amount and necessary. These fees included the cost of "quickly and successfully [litigating]: (1) the appointment of a Receiver with limited powers, (2) the removal of the general partner from office and the promotion of the Receiver to Receiver with full administrative powers over the Partnership, (3) the recovery of Partnership assets concealed by the general partner, and (4) the sale of Lamoille View Apartments for $1,187,000." The total amount sought included both the $30,000 previously authorized and paid, the $53,206.92 pending at the time of the arbitration, and additional fees incurred post-arbitration for a total of $85,614.

¶ 39. On August 15, 2013, the court entered final judgment confirming the arbitration award. The judgment order confirmed the "initial distributive share[s]" determined by the arbitrator of $1,118,150.22 and $809,842.92 to plaintiffs and Lunde respectively. It then awarded additional costs to plaintiffs, including attorney's fees of $53,206.92, $4,484.03, and $6,560, and litigation support in the amount of $1,958.40. The final judgment stated that the net receivership estate was $1,819,093.69 after payment of additional unpaid charges, including the additional legal fees. The respective distributions were $1,107,376.07 to plaintiffs and $711,717.62 to Lunde. Both distributions were reduced equally by $186,000 for taxes. *Id.*

¶ 40. Lunde takes no appeal from the accountings created by the arbitrator and confirmed by the trial court. Nor does he challenge the reasonableness and necessity of the fees for work performed on behalf of plaintiffs or the receiver. His primary argument is that, as a matter of law, the arbitrator could not award legal fees at all.

¶ 41. Our review of the arbitrator's ruling is strictly limited under both federal and Vermont law. *Kolel Beth Yechiel Mechil of Tartikou, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103-04 (2d Cir. 2013) (stating that under FAA court may only modify or vacate award on grounds permitted by statute); *Vt. Built, Inc. v. Krolick*, 2008 VT 131, ¶ 13, 185 Vt. 139, 969 A.2d 80 (court may only modify or vacate award on grounds permitted by statute or where party has been denied due process). The only basis claimed by Lunde for vacating the award is that the arbitrator "exceeded his powers" by assessing attorney's fees against him in violation of the American Rule. As we have noted previously, "the vacatur ground that the arbitrator exceeded his powers does not authorize the court to review the legal or factual conclusions of the arbitrator." *Krolick*, 2008 VT 131, ¶ 17. "The proper inquiry 'focuses on whether the arbitrator[ ] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[ ] correctly decided that issue.' " *Id.* (quoting *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997)).

¶ 42. In this case, nothing in the partnership agreement limits an award of attorney's fees by the arbitrator. On the contrary, the arbitration clause in the agreement required arbitration of *"[a]ny*

dispute or controversy arising in connection with the Agreement or in connection with the dissolution of the Partnership." (Emphasis added.) Allocation of responsibility for costs, including attorney's fees, falls within this broad grant of authority to the arbitrator, even if its ruling might be reviewable and reversible had it been issued by a court. Plaintiffs presented their claim for attorney's fees to the arbitrator, arguing that the arbitrator could award attorney's fees in spite of the American Rule under commonly-recognized exceptions for breach of trust and prolonged and vexatious litigation. Plaintiffs asked the arbitrator, as a matter of law, to surcharge Lunde's share of the partnership assets with all of the attorney's fees incurred by plaintiffs in the receivership action and the arbitration proceeding. The arbitrator granted plaintiffs' request, finding that Lunde's fifty-percent share was to be surcharged with the receiver's fees, AAA costs and arbitrator fees, and plaintiffs' attorney's fees, although it left the actual amount of attorney's fees to be determined by the superior court. Thus, this is not a situation where the arbitrator ruled on an issue precluded by the arbitration agreement or not presented by the parties.

¶ 43. ▮▮▮ What Lunde seeks is judicial review of the arbitrator's decision to award attorney's fees to the limited partners. He asks the Court to apply the standards that might have applied if the case were decided in court, but it was not. The parties chose a different forum with a different scope, procedure, and standards. The arbitrator had broad authority pursuant to the parties' agreement and its determination is not subject to the same level of review as a judge's determinations would have been. The arbitrator's award involved a "judgment about facts and law" that we are without power to review. *Krolick*, 2008 VT 131, ¶¶ 19, 20 (quotation omitted) (holding that it was error for superior court to modify arbitration award because arbitrator exceeded powers by denying plaintiff's request for attorney's fees, where issue was properly submitted to, and decided by, arbitrator). As we noted in *Krolick*, "[a]n arbitrator does not exceed his or her powers where the 'real objection appears to be that the arbitrators committed an obvious legal error in denying [plaintiff] attorney's fees.'" *Id.* ¶ 17 (quoting *DiRussa*, 121 F.3d at 824).

¶ 44. ▮▮▮ The situation in this case is the opposite — Lunde's claim is that the arbitrator committed an obvious legal error by

granting plaintiffs attorney's fees — but the same principle applies. An arbitrator must act within the scope of his or her delegated authority, but its decisions are not subject to the same appellate review as those made by a judge with respect to facts and law. Lunde has failed to establish that the partnership agreement or the parties' submissions prevented the arbitrator from reaching the issue of attorney's fees. As a result, he cannot establish that the arbitrator exceeded his powers, and there is no ground for vacating the arbitrator's award.

¶ 45. The trial judge's decision to reserve some continuing authority over the issue of attorney's fees in the context of the receivership created some confusion both in the arbitration and on appeal. Two points, however, emerge from the parties' briefs which greatly clarify matters. The first is that it was the arbitrator — not the trial court — who decided that Lunde should be surcharged for the financial consequences of his conduct. The trial court never made a ruling on this issue because it was subject to the arbitration clause.

¶ 46. The second is that any confusion about which fact-finder should determine the amount of attorney's fees was resolved by the arbitrator and the court in making the decision to award attorney's fees. The arbitrator determined that all fees incurred to date plus a statement that was still payable were fairly charged to Lunde, subject to review and confirmation by the trial court. The trial court reviewed the charges for the traditional requirements of reasonableness and necessity on the basis of an attorney's affidavit. It included some charges that had accrued since the arbitration award. Lunde did not appeal from any specific amount. In the end, the trial court exercised the type of authority which its original order contemplated: a review of the reasonableness of the charges. Since the trial court did not enter its own ruling as to whether attorney's fees were due at all — and left this question to be decided through binding arbitration — the attorney's fee issue is reviewable only through the narrow lens of judicial review of arbitration awards.

¶ 47. We remand on a single narrow issue which was not raised below or on appeal. It appears that the Ryan Smith & Carbine bill for legal services in the amount of $53,206.92 was charged to Lunde twice. It first appears in the list of "payables" in the arbitration award where it forms part of the $210,450.60 in "avoidable costs" charged against the general partner. The arbi-

tration award results in an "adjusted amount available to the GP" of $809,842.62, including an offset for the $53,206.92 in attorney's fees.

¶ 48. The same charge of $53,206.92 appears again in the court's final judgment. The final judgment includes a second accounting that starts with the $809,842.62 due to the general partner under the arbitration award. It reduces this amount by subsequent charges including additional receiver's fees and attorney's fees. In addition, it reduces the $809,842.62 by $53,206.92 — the same amount already reflected in the arbitration award.

¶ 49. Since neither party has addressed this apparent double-charge, we remand the matter for a further hearing confined to this single issue.

*Affirmed in all respects, except that the matter is reversed and remanded for the trial court to conduct a further hearing on the issue of the apparent double-charge of attorney's fees to appellant.*