STATE OF VERMONT

| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 154-12-15 Vtec |
|---|---|
| Old Lantern Non-Conforming Use | |

## Decision on Post-Trial Sanctions Motion

This matter was the subject of a trial that was recounted in a Merits Decision issued on April 2, 2018. After the trial, but before this Court issued its Merits Decision, Appellee Old Lantern Barn, together with its owners, Lisa and Roland Gaujac (hereinafter collectively referred to as "Old Lantern") filed a motion for monetary sanctions against Appellants Alison and Adrian Wolverton ("Appellants") and their attorney, James A. Dumont, Esq., for what Old Lantern asserts was an "abuse of the judicial process." Appellants and their attorney strongly object to the sanctions request. Both Old Lantern and Appellants, joined by their attorney, have filed supplemental memoranda in support of and in opposition to the sanctions request. The Town of Charlotte ("Town") and Interested Persons Michael Frost, Karen Frost, Maura Wygmans, and Justin Wygmans have chosen to not engage in this post-trial sanctions dispute.

## Discussion

We begin our analysis with a review of the case law concerning what constitutes abuse of judicial process and whether a trial court has the authority to sanction a party and their attorney for such abuse.

A "trial court has inherent authority under the law of this state to award monetary sanctions against a litigant or attorney who abuses the judicial process." Provident Funding Associates, L.P. v. Campney, 2017 VT 120 ¶ 18, citing Van Eps v. Johnston, 150 Vt. 324, 327 (1988). In Van Eps, our Supreme Court defined abuse of the judicial process to include "acting in bad faith, ignoring court orders, and scheduling delays causing prejudice to the opposing party." Id. (citations omitted).

Provident Funding provides further guidance in the case at bar, even though it presented somewhat different procedural facts. In that case, a successor-in-interest to a first mortgagee and promissory note holder initiated multiple foreclosure actions after the mortgagor/ homeowner defaulted on the note. The trial court had dismissed three prior foreclosure actions on the same note and mortgage after the plaintiff failed to prosecute the actions, either by failing to properly serve a defendant or respond to notices from the court. When the plaintiff presented an identical foreclosure action for the fourth time, a junior mortgagee moved to have the action dismissed. The Court granted the junior mortgagee's dismissal motion and, as a sanction for causing the junior mortgagee to incur the unnecessary expense of having to hire an attorney to respond and participate in the three prior identical foreclosure actions, which plaintiff then caused the court to dismiss, the trial court ordered that plaintiff would be precluded in the future from foreclosing the junior mortgagee's interest in the subject property. Id at ¶ 8.

On appeal, the Supreme Court affirmed the trial court's determination that a sanction was warranted, but reversed the dismissal sanction and remanded the action for the trial court to consider monetary sanctions, specifically reimbursement of attorney's fees, as an alternate sanction against plaintiff for its improper actions. Id. at ¶ 20. Thus, the Supreme Court established that ordering reimbursement of an innocent party's attorney's fees is an appropriate sanction against a party who is found guilty of abusing the judicial process. In so ruling, the Court cited to several of its prior decisions, including O'Rourke v. Lunde, 2014 VT 88, ¶ 33, 197 Vt. 360, 104 A.3d 92 (explaining that an award of attorney's fees is permissible in "exceptional cases," such as where party is forced to undergo multiple rounds of litigation (quotation omitted)); and Lamell Lumber Corp. v. Newstress Int'l, Inc., 2007 VT 83, ¶ 23, 182 Vt. 282, 938 A.2d 1215 (affirming award of attorney's fees to plaintiff as monetary sanction for defendant's failure to appear at scheduled jury draw). While the case at bar presents a different set of procedural facts, we find these decisions helpful in analyzing Appellees' motion for sanctions and Appellants' objections.

I.    **Did Appellants' and their attorney's actions constitute an abuse of the judicial process?**

In the Merits Decision issued last week, we addressed the frustrations that were caused by Appellants and their attorney when they chose, on the first day of the scheduled trial, to not

participate in that trial. We have those frustrations in mind and incorporate them here by this reference. However, to determine whether and how Appellants and their attorney may have abused the judicial process, we must look back to the various filings and court decisions leading up to the de novo trial in this appeal.

This appeal concerns an area of the law that is not wholly clear and can be complex. A challenge to the lawful use of a property that does not comply with the present zoning regulations can present multiple layers of factual and legal issues. This appeal was no exception, and the vigor with which the parties here litigated those legal and factual issues presented perfect examples of how complex the legal analysis of non-conforming uses can become. In particular, the Court wrestled for some time with the legal concept that an expansion of a non-conforming business use, absent a physical expansion of the property improvements, may not result in the targeted property losing its grandfathered status. See In re Old Lantern Non-Conforming Use Appeal, No. 154-12-15 Vtec, slip op. at 14–15 (Vt. Super. Ct. Envtl. Div. July 3, 2017) (Durkin, J.). When the parties filed several reconsideration motions, we revisited the intensity and related issues in our Entry Orders issued on September 13, 2017, and November 13, 2017.

We continue to believe that the neighboring Appellants and Interested Persons held sincere concerns about the use of the Old Lantern Barn, its alleged increase in intensity, and whether their concerns could legitimately be raised in this appeal. We found no abuse of the judicial process in the way in which they pursued those concerns in this litigation.

Our pre-trial rulings set the parameters of what legal and factual issues were within our jurisdiction in this appeal. We reviewed those determinations again as we prepared our Merits Decision and continue to believe those rulings reflect an accurate reading of the current case law. But we find no abuse committed in the manner in which Appellants and their attorney challenged the applicable case law precedent, or our interpretation of it.

However, we do find fault and abuse in how Appellants' addressed (or rather, failed to address) the issues that remained for trial. Our pre-trial rulings left four Questions from Appellants' Statement of Questions as ripe for resolution at trial. These Questions memorialized Appellants' long-running assertions that (1) the Old Lantern Barn had changed from offering

meals only prepared off-site, to offering meals prepared on-site; (2) the Old Lantern Barn had been changed or expanded to a restaurant, open to the general public; and (3) the Old Lantern Barn had ceased operations for six months, or more. If Appellants, assisted by their attorney, presented sufficient facts to support these long-standing accusations, they could have provided a factual foundation for a legal determination that the Old Lantern Barn should no longer be regarded as a lawful, pre-existing but non-conforming use.

We never received Appellants' presentation of facts that supported these claims. And we are left to assume by Appellants' decision at the start of trial that they never had the facts to support these accusations. We are left to conclude that Appellants made these bold assertions throughout two to three years of administrative proceedings and litigation without ever having any facts to support these allegations. We are left to wonder whether Appellants, and perhaps their attorney, simply created these allegations from thin air, in their zeal to bring an end to Old Lantern's business operations.

Our fears were compounded by the manner in which Appellants revealed their lack of evidence. We recognize that the discovery process in any litigation can reveal many things, including the reliability of one's own facts. But when it became apparent that Appellants had no factual foundation for the legal issues raised in the four Questions that remained for adjudication at trial, they and their attorney had ample time to confess that reality to opposing counsel and the Court. Instead, Appellants and their attorney caused Old Lantern, their attorney, and this Court to commit the time and resources to trial preparation. When all parties and their counsel appeared for the first day of trial, they and the Court understood that Appellants came prepared to present their evidence, at the appropriate time, and participate in the trial. Instead, Appellants, through their attorney, asked for confirmation of the Court's pre-trial rulings, and then advised that they had decided not to participate in the trial. We continue to believe that Appellants' and their attorney's actions are the most egregious of any the undersigned has witnessed in thirty-three years of civil trial litigation.

One more circumstance deserves mention. Appellants asserted a new legal theory at the beginning of trial, not previously disclosed to the Court: the notion that an ordinance existed, or once existed, that required Old Lantern to obtain a recreation or dance hall permit, that Old

Lantern had failed to receive such a permit, and that this omission justified vacating Old Lantern's grandfathered status. Appellants' little to no prior notice of this new legal theory for denying Old Lantern's lawful non-conforming use left no time to verify whether such an ordinance ever existed, still exists, and whether Old Lantern had ever received such a permit. More to the point in this limited jurisdiction de novo appeal, Appellants and their attorney offered no legal rationale as to how the Court's jurisdiction would allow such a claim to be entertained in this appeal. When the Court posed that query and made that ruling, Appellants and their attorney saw fit to give notice that they would therefore begin the process of submitting yet another complaint to the Town Zoning Administrator about the Old Lantern Barn's lawful status. Appellants and their attorney suggested that their inability to raise this new issue in this appeal was an additional rationale for their decision to not participate in the trial.

We appreciate, but find unconvincing the affidavit of Kevin Brown, Esq. offered by Appellants and their attorney as an explanation for their actions on the first day of trial. Mr. Brown never appeared in this proceeding. Respectfully, his affidavit appears to be drafted more as an advocacy document than as an objective assessment of the legal challenges presented in this litigation.

Lastly, we note that Appellants' attorney spent considerable time in his opposition memoranda relying upon the notion that in this proceeding, it is Old Lantern that carried the various burdens of proof. Some of what Appellants' attorney represents is accurate, as to the burden of proof, but we are unconvinced that his legal theory justified his and his clients' antics on the first day of trial. Burdens of proof often shift, even when the ultimate burden of persuasion returns to the originally-burdened party. But as an officer of this Court, Appellants attorney had a duty to inform opposing counsel and this Court, well in advance of trial, when he became aware that Appellants possessed no evidence, or were unprepared to present such evidence, that would support the claims that Appellants presented in their Statement of Questions.

For all these reasons, we conclude that Appellants and their attorney committed an abuse of the judicial process when they failed to disclose their lack of any evidence to support their remaining claims, and failed to make such a disclosure, including up to the first day of trial.

II.      **What is the appropriate sanction?**

In light of our conclusions concerning the abuse of the judicial process that Appellants and their attorney committed, we turn to the question of whether to impose the sanction Old Lantern requests of reimbursement of their attorneys' fees and expenses. Old Lantern also requests that the Court conduct a hearing to receive evidence and argument before making its ruling. We believe a hearing will be necessary to make an informed determination of the appropriate reimbursement level as a sanction and therefore **GRANT** that request. However, for the benefit of the parties, we provide the following guidance on the parameters of the evidence that the Court will entertain.

We first note that Old Lantern appears to request that the Court entertain ordering Appellants and their attorney to reimburse a sum of $80,000.00 in attorneys' fees, and it appears that Old Lantern represents that this sum is approximately the full amount of attorneys' fees that Old Lantern incurred to the day of trial. Whether that is the total of legal fees incurred or not, we **DECLINE** to order a sanction of that scope.

Our judiciary adheres to the "American Rule" concerning reimbursement of attorneys' fees which provides that, absent a contractual or statutory provision to the contrary, all parties must bear their own costs of legal representation, even when they prevail in litigation. See Southwick v. City of Rutland, 2011 VT 105, ¶ 5, 190 Vt. 324 ("affirming that Vermont adheres to what is called the American Rule: parties must 'bear their own attorneys' fees absent a statutory or contractual exception.'"), quoting DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 246 (2001). Thus, even when a party prevails in litigation in Vermont, such as Old Lantern did here, they must bear the cost of their own attorneys' fees when they prevail, absent a contractual or statutory provision to the contrary. It is for this reason that we decline to entertain a request for attorneys' fees incurred in the pre-trial preparations in this litigation, before Appellants and their attorney committed their abuse of the judicial process.

We make reference to this general rule to clarify the focus of our future hearing: we are only considering the possible reimbursement of attorneys' fees as a sanction against Appellants and their attorney for the abuse of the judicial process that they committed. Thus, our consideration here does not cause us to ignore the American Rule to which Vermont generally

adheres. Rather, we rely upon the equitable powers that this Court enjoys when considering an award of attorneys' fees as a sanction "against a litigant or attorney who abuses the judicial process." Provident Funding Associates, L.P. v. Campney, 2017 VT 120 ¶ 18 (citation omitted).

## CONCLUSION

For all these reasons, we conclude that Appellants Alison and Adrian Wolverton ("Appellants") and their attorney, James A. Dumont, Esq. abused the judicial process as detailed above and shall hold a hearing to receive evidence on a monetary penalty to be imposed upon Appellants and their attorney, and whether an award should be imposed individually or jointly and severally, consistent with the guidelines for such an award outlined above.

A Notice of hearing accompanies this Decision.


Electronically signed on April 13, 2018 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division