VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case Nos.    22-AP-248 &
24-AP-056



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2024

David Silverberg* v. Brenda Kazanes

 } APPEALED FROM:
 }
 } Superior Court, Lamoille Unit,
 } Family Division
 } CASE NO. 67-5-19 Ledm
  Trial Judge: Michael J. Harris

In the above-entitled cause, the Clerk will enter:

Father appeals the family division's parent-child contact (PCC) award. We affirm.

Father filed this parentage action in 2019. In September 2019, the court issued a final order awarding shared legal and physical parental rights and responsibilities (PRR) for the parties' three children, who were all minors at that time. The order contained no PCC provisions because the parties continued to live together.

In October 2020, father moved to modify parental rights and responsibilities and parent-child contact. While the motion was pending, the court issued temporary orders giving father sole medical PRR and requiring supervised phone and remote PCC for mother. In July 2022 the court granted father's motion to modify the original custody award.

The court made the following findings in its July 2022 order. The parties' three children were born in 2005, 2007, and 2018. A short separation between the parties in the spring of 2019 led to the initial filing of this parentage action. At the time of the September 2019 order, father worked long hours and earned the household income, while mother was the primary caregiver for the children. From September 2019 until October 2020, the parties continued to reside together, but their relationship became increasingly tense and contentious. Father sometimes exerted control over mother by taking away her car keys, leaving her confined to the house. He also restricted her access to bank accounts and debit cards, sometimes leaving her unable to buy groceries. During this same period, mother developed a bloodstream infection that doctors were slow to diagnose and took over a year to treat. Before the condition was fully treated, she experienced irritability and nausea. Mother also suffered from postpartum depression. She began to struggle with alcohol abuse, sometimes while the children were in her care. When intoxicated, mother often became aggressive toward father. Father and mother fought frequently, sometimes in front of the children.

Mother moved out in October 2020 and began living at a hotel. The parties informally agreed to equally share PCC, but this arrangement was not followed, at least as to the two older children, in part due to those children's independent decisions. The older daughter stayed with father and refused to go to mother's, and son stayed with mother and often resisted visiting with father. Mother moved out of the hotel and into her current permanent residence in late 2020 or early 2021.

The parties agreed to use a parent coordinator to work on a PCC schedule and parenting issues. From February to June of 2021, the coordinator worked with the children's providers, including therapists, physicians, educational providers, and other professionals, as well as all members of the family. In March 2021, with the help of the parent coordinator, the parties stipulated to, and the court approved, a temporary PCC order providing that son and the younger daughter would live primarily with father. Due to son's violent behavior, the order provided that son and the younger daughter could not stay at the same house at the same time. However, this temporary PCC order did not work as planned, in part because the older children refused to stay with father.

For several months, the parent coordinator tried numerous different PCC schedules. The last temporary PCC schedule was set in September 2021. Although the parent coordinator generally aimed for equal PCC, most of these schedules, including the September 2021 order, required mother's in-person and remote PCC to be supervised because there was evidence that mother disparaged father and undermined his decision-making in front of the children. During this time, pursuant to court order, mother completed numerous courses and read information about how to recognize harm done to children by negative comments and attitudes of parents, about related child-development issues, and about co-parenting and parallel parenting.

The temporary PCC schedules were often not followed. The two older children frequently absconded to mother's home during father's time and communicated remotely with her even if no supervisor was available. The court found that, for the most part, the children were acting independently and mother was not encouraging them to violate the orders.

In June 2022, the older daughter ran away to mother's home for six days. Father filed for a relief-from-abuse (RFA) order against mother on behalf of daughter, which was denied. Later in June, son ran away to mother's home. Father filed an RFA action against mother on behalf of son, which was also denied. The older children stayed with their mother during June and July of 2022 in violation of the existing temporary PCC order. Meanwhile, the final merits hearings in this matter were ongoing and father was filing motions for enforcement and contempt against mother. Despite court orders directing mother to return the children to their father, mother reported that the children refused to go, and that she could not force them.

Throughout the pendency of this action, the two older children suffered from severe mental-health issues. Daughter was diagnosed with schizophrenia and made suicidal threats, and son displayed violent and physically destructive behavior. Father primarily handled communications with the children's providers and took them to appointments. Mother ensured that the children took their medications and attended appointments when they were with her, but typically did not engage with the children's medical providers.

In its July 2022 order, the court found that that since September 2019, there had been real, substantial, and unanticipated changes in circumstances, including alcohol abuse by mother,

2

the older daughter's schizophrenia diagnosis, son's serious mental and behavioral issues, and the parties' inability to make joint decisions regarding the children's treatment and care or parent-child contact. The court considered the best-interests factors set forth in 15 V.S.A. § 665(b) and found that the parties were equally situated with respect to most of them. However, it found that father had been the children's primary care provider since May 2021, father had sought medical and mental-health treatment for the children and followed providers' advice, mother had failed to engage herself in the children's care and treatment or to cooperate with providers, mother had not consistently followed visitation orders or attempted to get the children to follow them, and mother had disparaged father in front of the children, risking harm to their psychological welfare. The court therefore awarded father sole legal and physical PRR. It concluded, however, that it was in the children's best interests to maximize contact with each parent and ordered the parties to transition to a 50/50 PCC schedule after six weekends of supervised visits. The order was subject to various conditions including that the parties continued to engage the older children in therapy and that mother engage in individual counseling. The court denied father's petitions for RFA orders on behalf of the children, concluding that the PCC order would protect the children from risk of psychological harm.

Less than a month after the court issued the July 2022 order, father filed emergency motions to enforce and modify the order and to hold mother in contempt. After a hearing in August 2022, the court issued a temporary order giving mother alternating weekends with the two older children. The court found that in early August 2022, son left father's home during father's contact time and went to mother's home. When police arrived at mother's home, mother falsely told the officer that there was no PCC order. She made no effort to have son follow the order. Mother subsequently canceled a visit with son's therapist over father's objection so that son could attend a party. In September 2022, the court issued an order indefinitely continuing the temporary PCC arrangement of alternating weekends with mother for all three children. The court denied father's motion to reconsider the July 2022 order. Father appealed that order to this Court.

In February 2023, while his first appeal was pending, father filed a new motion to modify parent-child contact. He asked the court to adopt the temporary schedule of alternating weekends as the permanent PCC arrangement. Because this motion could moot the first appeal, and the parties were not following the July 2022 order, we remanded the matter to the family division to decide father's motion.

The family division held a hearing on father's motion in December 2023 and issued an order in February 2024. By then, the older daughter had turned eighteen and was no longer subject to the court's jurisdiction. The court made the following additional findings.

Son remained with mother after the August 2022 hearings until mid-September, when father called the police to remove son from mother's home and return him to father's home. After that, son and mother followed the PCC order. In November 2022, mother attended a meeting at son's school and signed him up for a school trip to Quebec without consulting father. Father expressed his disapproval of mother's action but son was allowed to go on the trip.

Son was enrolled in individual therapy but often refused to attend sessions. Father withheld son's phone privileges to induce him to attend therapy. Because father does not have a landline, this meant that mother was unable to call son. In December 2022, mother purchased a cell phone for son without telling father.

In the spring of 2023, son, who was then fifteen-and-a-half years old, expressed interest in going to Pennsylvania for the summer to work for father's brother-in-law. Mother agreed to the plan without demanding make-up time. After going to Pennsylvania, son changed his mind and asked mother to come get him. Mother wanted to do so, but father felt son should follow through on his commitment. Son remained in Pennsylvania as planned. Upon his return, father allowed son to visit mother one day outside the normal schedule. Son did not return home in the evening as father expected and instead stayed the night at mother's, over father's objection.

Son was scheduled to spend Thanksgiving 2023 with father. Mother asked if son could go to New Jersey with her instead, but father refused. This made son angry, and he slammed doors and spit on father. Later that weekend, mother met son at father's property to deliver a package. The next morning, son woke up early and left father's house on foot during a storm. He cut his wrists and was taken to the hospital for treatment. Although son had met with mother prior to the incident, the court did not find that she contributed to son's self-harming actions. When mother learned son was at the hospital, she went to see him. Father asked her to leave before he got there. Mother reacted angrily to this and accused father of being the reason son was in the hospital. Father arranged for therapy for son after this incident but son refused to attend.

The court found that in general, since September 2022, mother and son had followed the PCC schedule and father had not needed to call police or crisis-intervention teams on son's behalf. The court described this as "a dramatic change." Son had regularly attended school since September 2023. Although mother did not actively communicate with school personnel or attend school meetings, mother had not interfered with father's efforts to keep son engaged in school. Likewise, mother had not interfered with son's medical treatment. The court found that the parties had different approaches to parenting but that mother was no longer disparaging father to the children and had been compliant with the temporary PCC order. It found that son was challenging to parent; he often decided not to follow the rules and played his parents off each other to gain advantage.

The court found that since July 2022, mother had overused alcohol at times when the children were not with her, including during some video calls with the youngest daughter, but there was no evidence that she had drunk to excess during her in-person contact time.

The court concluded that there had been a real, substantial, and unanticipated change in circumstances since the July 2022 order, namely, mother's initial refusal to follow that order and the extended period of temporary restrictions on PCC. The court considered the statutory best-interests factors and determined that, despite the parties' difficulty communicating and concerns about mother's alcohol use, it was in the children's best interests to have equal time with both parents. It therefore denied father's motion to modify the July 2022 order, except that it required mother to complete an alcohol-use assessment and follow treatment recommendations and prohibited her from consuming alcohol during her contact time or within five hours of transporting the children. Father then filed this second appeal.

In his second appeal, father first asserts that this Court erred in remanding the matter to the family division because it delayed resolution of his challenges to the July 2022 order.[*]

---

[*] In his briefing in the second appeal, father does not reiterate his claims that the trial court violated a judicial canon requiring diligence in administrative responsibilities and exhibited

4

However, it was father's decision to file a motion to modify the order while it was under appeal that caused the delay. Father acknowledged in his first appellate brief that his motion to modify the July 2022 order could moot the first appeal. This Court did not, as father asserts, state that the parties were no longer subject to that order; rather it noted that due to the temporary PCC orders entered in August and September 2022, the parties had not been following the PCC schedule set forth in the July 2022 order. Under those circumstances, this Court determined that it would be more efficient for the family division to resolve the motion to modify in the first instance.

Father also argues that the family division erred in finding a change in circumstances sufficient to justify modifying the July 2022 order. But father is the party who argued that there had been such a change in circumstances due to mother's initial lack of compliance with the order. Having invited the alleged error, father cannot now challenge it on appeal. See State v. Morse, 2019 VT 58, ¶ 7, 211 Vt. 130 (explaining that "[u]nder the invited error doctrine, a branch of the doctrine of waiver, a party cannot induce an erroneous ruling and later seek to profit from the legal consequences of having the ruling set aside" (quotations and alterations omitted)).

Father's primary argument is that the family division improperly weighed the evidence and the statutory best-interests factors. The trial court has broad discretion in assessing the statutory factors, Maurer v. Maurer, 2005 VT 26, ¶ 10, 178 Vt. 489 (mem.), "and in setting a parent-child contact schedule." Barrows v. Easton, 2020 VT 2, ¶ 7, 211 Vt. 354. We review the court's parent-child contact award for abuse of discretion and will affirm "if it shows reasoned judgment in light of the record evidence." Lee v. Ogilbee, 2018 VT 96, ¶ 11, 208 Vt. 400 (quotation omitted). Further, "[w]e will uphold the family court's factual findings if they are supported by credible evidence, and we will uphold the court's conclusions if the factual findings support them." Maurer, 2005 VT 26, ¶ 10.

The court examined each of the statutory factors and adequately explained its decision. The court found that both parents were able and disposed to provide the children with love, affection, and guidance. 15 V.S.A. § 665(b)(1). Both were employed, had stable housing, and were able to meet the children's basic needs. Id. § 665(b)(2). The court expressed concern about the safety of mother's home given her past history of alcohol abuse and evidence that she had been intoxicated during some video calls with the younger daughter, but concluded that this concern could be adequately addressed by PCC conditions. The court found that father was better able to meet the children's developmental needs, including their behavioral and emotional needs. Id. § 665(b)(3). It found that restoring the July 2022 order would change the children's

---

bias against him. We note that deciding contested cases is not an administrative responsibility, and a judge does not exhibit bias merely by finding one party more credible than another. See State v. Streich, 163 Vt. 331, 354 (1995) (explaining that rulings adverse to one party do not demonstrate judicial bias absent proof of improper motivation). Father also does not repeat his claim that an assistant judge who participated in the July 2022 order had a conflict of interest, but even if he had, that argument was not preserved for appeal because father did not raise it before the family division. See O'Rourke v. Lunde, 2014 VT 88, ¶ 21, 197 Vt. 360 (declining to reach claim of opposing counsel's conflict of interest where not raised before trial court). Finally, father's argument that the court failed to consider the statutory best-interests factors is moot because the court expressly reweighed those factors in its February 2024 decision.

present housing because the schedule in that order never went into effect. However, because the parties lived close to each other, and the children would attend the same schools and have the same caregivers, expanding mother's PCC would not be a difficult adjustment for the children. Id. § 665(b)(4). Neither parent was disposed to foster a positive relationship and continuing contact with the other, but father had consistently followed court orders and mother was now doing so as well. Id. § 665(b)(5). Father had been the primary care provider since October 2020. Id. § 665(b)(6). He had a close relationship with the younger daughter and his relationship with son had improved. The court found that giving mother equal PCC would not risk adverse consequences to the children, however. The court found that the children were close to their older sister, who now lived with mother, and expanding PCC would give them more opportunities to see her. Id. § 665(b)(7). It found that the final two factors did not apply because father had sole parental rights and responsibilities and there was no evidence of abuse. Id. § 665(b)(8)-(9). As to the former factor, however, the court noted that the parties were capable of communicating effectively at times.

Father challenges the court's best-interests analysis on several grounds. First, he argues that the court "failed to take any information" on the children's current routines and parents' work schedules, resulting in father having to support the children on mother's days when she is working. Father does not show that he attempted to introduce such evidence or that it was otherwise presented to the court. We therefore see no error.

Father next argues that there was no evidence to support the court's suggestion, in its analysis of § 665(b)(4), that expanding mother's PCC time could allow the youngest daughter to participate in more activities. The court found that mother was unwilling to allow daughter to participate in gymnastics because it would occur during her limited time with daughter. It was not unreasonable for the court to infer that mother might be more willing to agree to such activities if her PCC time was not so limited. Even if the finding was erroneous, however, father has failed to show that the court would have reached a different conclusion without it. Contrary to father's assertion in his brief, the court did consider the interests of both children in this factor, as it explained that neither would have to change schools or providers.

Next, father argues that the court erred in finding that he "did not welcome frequent and continuing contact" between the children and mother. The finding is not clearly erroneous, because the record shows that father did not want to increase mother's contact time with the children and felt that PCC should continue to be restricted to alternating weekends. The court did not find, as father suggests, that he wanted to stop all contact between children and mother.

Father argues that the court erred in finding that the children would have more time with their older sister, who lives with mother, if mother's PCC were expanded. Father argues that the record shows that oldest daughter has regular contact with the children regardless of their PCC schedule. Father does not identify any support for this assertion in the record. The finding is not clearly erroneous.

Father also contends that the court erred in concluding that the eighth statutory factor did not apply. However, the plain language of § 665(b)(8) requires the court to consider "the ability and disposition of the parents to communicate, cooperate with each other, and make joint decisions concerning the children where parental rights and responsibilities are to be shared or divided." (Emphasis added.) In this case parental rights and responsibilities were held solely by father. The court's order did not alter that arrangement. Moreover, although it stated that the

6

factor was not applicable, it found that parents were capable, at times, of communicating effectively around PCC, which weighed in favor of increasing mother's time. We therefore see no error in the court's assessment of this factor.

Father further claims that the court erred in finding that abuse was not a factor, arguing that mother's alcohol use and failure to follow the PCC order harmed the children. We disagree. "Abuse" for purposes of § 665(b)(9) exists when there is evidence of actual or attempted physical harm, stalking, sexual assault, or "abuse to children as defined in 33 V.S.A. chapter 49, subsection 2." 15 V.S.A. § 1101(1)(A). Abuse to children exists when a child's "physical health, psychological growth and development, or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent," and can include sexual abuse. 33 V.S.A. § 4912(1). "Harm," in turn, means physical injury, emotional maltreatment, failure to supply a child with basic needs, or abandonment. Id. § 4912(6).

There was no evidence of actions by mother that met these statutory definitions. While father argues that mother's prior violation of PCC orders emotionally harmed the children, father points to no evidence in support of this assertion, and the court found that mother had been compliant with the PCC order for over a year. And, while father alleges that mother drank to excess while the children were in her care, the trial court found no evidence that mother had done so, and father does not identify any such evidence in the record. See Begins v. Begins, 168 Vt. 298, 301 (1998) ("Given its unique position to assess the credibility of witnesses and weigh the evidence, we will not set aside the court's findings if supported by the evidence, nor its conclusions if supported by the findings."); State v. Norton, 134 Vt. 100, 103 (1976) (stating factfinder "may accept or reject, in whole or in part, the testimony of any witness").

The court did not disregard all evidence of mother's alcohol use, as father argues—it found that mother had overused alcohol in the past and that she had been intoxicated more than once during video calls with the youngest daughter. The court imposed conditions specifically prohibiting mother from using any alcohol during her time with the children or within five hours of transporting them and requiring her to engage in treatment. The court acted within its discretion in imposing these conditions.

Father also argues that the court ignored evidence that mother continued to undermine him to the children and instigated them to oppose him. Father argues that here, as in its previous order, the court failed to give significant weight to the opinions of the parent coordinator who worked with the parties earlier in the proceeding or the children's attorney. Father argues that the evidence shows that restricting mother's PCC is in the children's best interests. The court thoroughly considered the evidence presented. It found that, although mother had disparaged and undermined father to the children in the past, she had not done so for at least a year. The court also found that the older children frequently acted independently to violate the PCC schedule and spend more time with mother, and that son in particular played the parties against each other. The court acknowledged that father was better able to meet the children's developmental needs, but that maximizing contact with both parents was in the children's best interests. The court's order is supported by its findings, which are in turn supported by the record, and is consistent with legislative policy. See 15 V.S.A. § 650 (declaring that "it is in the best interests of [the] minor child to have the opportunity for maximum continuing physical and emotional contact with both parents, unless direct physical harm or significant emotional harm to the child or a parent is likely to result from such contact"). Father essentially asks this Court to reweigh the statutory best-interests factors, which we will not do. See Vance v. Locke, 2022 VT

7

23, ¶ 12, 216 Vt. 423 (explaining that "this Court does not reweigh the evidence or make findings of credibility de novo").

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice

8